CHARLES B. TOWERS v. STEVENS CATTLE COMPANY.[1]

May 17, 1901.

Nos. 12,557—(37).

**Contract by Letter—Signature.**

Where a contract is made through correspondence, it does not follow, as a matter of law, that the individual signature of the person who is president and manager of the corporation to letters is conclusive that he acts in his individual capacity. He may sign his individual name with an intent and purpose to bind the corporation, and in such case his acts would do so, if relied upon by the other contracting party.

**Same—Officer—Signature in Individual Name.**

Evidence considered in this case, and *held* to sustain findings of the trial court to the effect that letters written by the manager and president of a corporation accepting a proposition to give commissions to a stockbroker for securing purchasers of the corporate property, although signed in his individual name, were the acts of the corporation.

Action in the district court for Ramsey county to recover $300, commissions upon a contract for the sale of cattle. The case was tried before Kelly, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appeals. Affirmed.

*John B. & E. P. Sanborn*, for appellant.

*Morphy & Ewing*, for respondent.

LOVELY, J.

Action to recover upon a contract for commissions to be paid plaintiff for securing the sale of a bunch of young cattle for the defendant corporation. The cause was tried to the court, who found that "all the allegations of the complaint were true," and ordered judgment for the plaintiff thereon. Motion for a new trial was denied, and this appeal is from that order.

The finding of the court authorizes the conclusions that the plaintiff, who was a stock broker, proposed by letter to secure for defendant purchasers for the cattle which it owned, within prices

[1] Reported in 86 N. W. 88.

agreed upon, and receive stated commissions therefor. The negotiations were conducted and the agreement was consummated entirely through correspondence, both parties living at different places. One George H. Stevens was president and manager of the defendant company, had general control of its business, received and opened all letters to the corporation, and answered all letters to plaintiff in the business referred to on defendant's blank letter heads. The plaintiff addressed several letters to the defendant, and several to George H. Stevens personally. The letter upon which the proposition for the commissions was first made was addressed to defendant in the corporate name, but the acceptance was signed by Stevens individually.

It is earnestly contended for defendant that inasmuch as this, as well as letters to plaintiff, was signed by George H. Stevens individually, the contract was necessarily made with him, and not with the cattle company. It does not follow, as an absolute matter of law, that, because such letters were signed in Stevens' individual name, he did not use his signature for or in behalf of the corporation, if such an understanding and intent can be gathered from the acts of the parties and the entire correspondence, taken together in connection with the subject-matter of the deal. The important fact appears that all letters signed in this case by Stevens in his individual name were written upon defendant's letter heads, whereon he was designated as the president and manager of the corporation, and relate to property he did not then own, but the corporation did, while no claim or attempt was made to show that Stevens owned any cattle to which an individual transaction between himself and plaintiff would apply. The plaintiff wrote some letters to Stevens, as well as to the company, all about the same subject-matter (commissions for securing purchasers); and while Stevens answered all letters in his own name, which well might have been a custom adopted and pursued by him in the business of the corporation, yet it does not appear that any distinction with reference to a different ownership of the property to which commissions were to apply was ever suggested in the correspondence, and it is apparent that plaintiff supposed

he was to act for the defendant in procuring purchasers of the corporate property.

The court below had the whole correspondence before it, and, upon the entire record, we think there was evidence to support its view that such letters showed "corporate earmarks," in the deal between the cattle company and the plaintiff; hence the finding of the trial court should be sustained, unless it can be held, as a matter of law, that the plaintiff, in attempting to deal with the corporation, through its manager in charge of its business, with reference to the corporate property, is concluded absolutely by the individual signature of the manager in the letters referred to. We do not think that such a rule finds support in the decisions of this or other courts. In such a case the whole transaction evidenced by the acts of the parties in connection with the whole correspondence should be taken together, and the sense in which the signature was used is a matter of proof. No doubt where the instrument evidencing the contract is complete, and it appears from its terms that the party who signed it is the contracting party, parol evidence cannot be introduced to change it (and the cases cited by defendant do not go further than to establish this elementary proposition); but where the manager of a corporation, acting for it, uses his own signature, and it is doubtful even whether he was using such signature for corporate or individual purposes, such doubt may be resolved, if the evidence justifies, in favor of the conclusion that he made use of the same for the corporation. We think the views stated above find support in the case of Souhegan Nat. Bank v. Boardman, 46 Minn. 293, 48 N. W. 1116, cited by appellant, where it was held that the signature of the officer of the bank was prima facie the official act of such treasurer, and the contract of the corporation; but, being only prima facie evidence of such relation, it might, of course, be shown to be an official, instead of an individual, act.

It appeared in proof that, among efforts by plaintiff to secure purchasers for the defendant's six hundred head of cattle, he wrote a letter to one Uhlman, the general manager of the Morning Star Company of Roberts, Wisconsin; that Uhlman wrote a letter, under the advice of plaintiff, to Stevens, with reference to

the cattle, which he afterwards purchased of defendant. The foundation may not have been sufficiently laid to warrant the introduction of the copy of this letter, but we are unable to see how its reception in this case could prejudice the defendant. It could only have weight as tending to show that a sale between the Morning Star Company and defendant was concluded, and it is conceded that, after the time when the letter was written, the Morning Star Company did in fact purchase the cattle of defendant. Further testimony in the case also established beyond question that the attention of the Morning Star Company was directed to the six hundred head thus purchased by plaintiff.

We do not consider other assignments of error upon questions of fact which have been disposed of by the trial court of sufficient importance to require specific notice.

Order affirmed.