## C. E. MATTESON v. UNITED STATES & CANADA LAND COMPANY.[1]

September 2, 1910.

Nos. 16,574—(101).

**Breach of land contract — action for damages — evidence.**
    In an action to recover damages for grantor's failure to perform agree-

[1]Reported in 127 N. W. 629, 997.

ments on contracts for the sale of lands, the grantee need not show present ability to make future payment under the contracts.

### Rulings in a prior action upon same facts.

Rulings in a previous action, from the order of dismissal in which no appeal has been taken, are not binding upon the parties to another action subsequently brought upon the same facts.

### Order granting new trial — newly-discovered evidence.

Where an order granting a new trial is not accompanied by a memorandum of the trial court setting forth that the verdict was not sustained by the evidence, it will not be assumed to have been a discretionary order. This rule, however, applies only to the evidence actually adduced at the trial, and not to newly discovered evidence.

### Authority of agent to sell land — ratification.

The authority of an agent to contract for the sale of land must under the statute of frauds be in writing; but such a contract, if oral, may subsequently be ratified by the principal.

### Ratification a question of fact.

Here the assistant secretary of defendant corporation agreed in writing to sell tracts of land to plaintiff. The by-laws of the corporation required such a contract to be signed by its president and secretary. Plaintiff paid part of the consideration, which was properly credited upon the books of the corporation. Defendant retained the money, and subsequently returned it to plaintiff. A number of letters concerning the contracts were sent to plaintiff, signed by defendant's principal officers. Resolutions pertaining to the sale of the lands to the plaintiff were adopted by the regularly assembled board of directors of defendant. These and other circumstances, it is held, presented a question of fact whether the contracts had been sufficiently ratified to impose legal obligations upon defendant.

### Charge to jury — new trial.

The defects in the charge, in connection with the affidavits of newly-discovered evidence, justified the trial court in granting a new trial.

Action in the district court for Hennepin county to recover $12,000 damages for breach of contract. The complaint alleged a verbal agreement to sell plaintiff twenty-four hundred acres of land, described in the complaint, at the price of $8 per acre, payable part in cash and the balance on or before five years with interest. The complaint alleged it was agreed defendant's secretary and manager should prepare written applications for the land described, and each

application so prepared was signed by plaintiff, but it was expressly understood by both plaintiff and defendant that the applications constituted a single application and by signing the separate papers neither party was relieved from the obligation to perform the contract as an entirety; that the applications were accepted in writing; that plaintiff paid defendant $4,800 which was retained by defendant; that the written contract conformed to the verbal contract; that plaintiff was ready and willing to perform the agreement, but defendant failed and refused so to perform, refused to convey the land or cause it to be conveyed to plaintiff, and declared its inability to do so.

The answer denied all the allegations of the complaint, except that relating to the corporate existence of defendant.

The case was tried before Holt, J., and a jury which returned a verdict in favor of plaintiff for $5,272.59. From an order granting defendant's motion for a new trial, plaintiff appealed. Affirmed.

*Albert E. Clarke* and *D. F. Carmichiel,* for appellant.

*W. H. Hallam,* for respondent.

JAGGARD, J.

Plaintiff and appellant signed three applications to purchase lands therein described of defendant and respondent land company. One of these applications was for a tract consisting of nine hundred and sixty acres. The total number of acres applied for was twenty-four hundred. In view of plaintiff's purchase of this large number of acres, defendant reduced the price from $8.50 to $8 per acre. Defendant's assistant secretary, Packard, for the defendant company, signed the acceptance of the applications. Subsequently letters signed by him and by the general manager treated the purchase as a completed one. Plaintiff remitted $4,800 to the defendant by draft in full for the advance payment. This was credited to him by the defendant on May 9. Its receipt was acknowledged by defendant's president. It subsequently transpired that defendant could, and it offered to, convey title to all except the tract of nine hundred and sixty acres. A regular meeting of the directors of the defendant company was held on August 27, at which the following record was made: "A

motion was made by————[secretary] seconded by ————, that the deal of [plaintiff] * * * be laid on the table until the next regular meeting of the directors, which was called Sept. 12th, 1906. Motion carried." The defendant advised Matteson on August 13 that his proposition would be placed before the directors at their meeting of August 13. On September 12 another meeting of defendant's board of directors was held. "A motion was made by ————[secretary,] * * * seconded by ————, that the secretary be and is hereby authorized to return to [plaintiff] $1,800, which he paid the company for a certain tract of land, together with interest * * * for the time the money has been carried by the company." The amount was accordingly remitted to plaintiff, who retained it and applied it, he contends, on account of damages. Plaintiff sued to recover "for the failure and refusal of the defendant to perform said contract, and the loss by the plaintiff of the benefit of his bargain resulting therefrom; the plaintiff has sustained damages in the sum of $16,800." The court granted defendant a new trial. This appeal was taken from that order.

1. Three positions were advanced by counsel which are without merit. Defendant insists that plaintiff must show an ability to make the future payments prescribed by the contract. Defendant had refused and failed to perform, and had returned the consideration paid by plaintiff on the contract. The breach of the contract was complete. No reason or authority required plaintiff to go through the formality of showing his future ability to perform obligations which had not matured, and which in view of defendant's breach could not mature.

Defendant also insists that the law established in a former action brought by this plaintiff against this defendant for the cause of action herein set forth, dismissed without prejudice, was final and conclusive, because no appeal had been taken from the rulings therein made by the trial court. The effect of that dismissal was merely to "snuff out the candle." The rulings then laid down do not become res judicata. Compare Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, 4 L.R.A. 793, with 48 Fed. 62, 1 C. C. A. 37.

Plaintiff insists, properly enough, that inasmuch as the trial court had filed no memorandum as to the grounds on which the new trial

112 M.—13.

was granted, therefore, the order will not be presumed to have been discretionary. He further suggests, however, that alleged newly-discovered evidence simply extended the question whether all the evidence, including that thus tendered, would sustain the verdict. The question of the sufficiency of the evidence still remains. But, while the first proposition is true enough, when the court passed upon the sufficiency or insufficiency of the evidence, it necessarily referred to the evidence ruled upon by the trial court on trial. The newly-discovered evidence was a distinct matter, arising subsequently. The principle to which plaintiff appeals did not refer to newly-discovered evidence.

2. The gist of the controversy concerns the validity of the contract under the statute of frauds. Contracts for the sale of land are void unless there is a sufficient memorandum thereof in writing, subscribed by the party making the sale or by his lawful agent thereunto authorized in writing. R. L. 1905, § 3488. The by-laws of defendant required such contracts to be signed by its president and secretary.

In point of fact the contracts here in controversy were signed by the assistant secretary only. His signature alone would not bring the case within the statute. If this were all there were to the case, it is clear judgment should have been directed for the defendant. There is, however, much more. As to the validity of the contract, it rests substantially on three matters: (1) The signature of the assistant secretary, to whom [defendant] intrusted the stamp signature of the corporation, and other conduct, whereby he was held out as authorized; (2) the receipt of the money by defendant; (3) defendant's subsequent conduct, as in retaining and finally returning the money, in the correspondence of defendant's various and principal officers with plaintiff concerning the land, and especially in the resolutions of its duly assembled board of directors concerning this contract for the sale of land.

The facts in the case, it is to be noted, differed obviously and materially from those in which the contract is made out of letters between the parties, as in Towers v. Stevens Cattle Co., 83 Minn. 243, 86 N. W. 88, and Curtis v. Interior, 137 Wis. 341, 118 N. W. 853,

129 Am. St. 1068. Nor are authorities in force in which there is a presumption of authority in a managing officer, in absence of proof to the contrary, Milwaukee v. Van Valkenburgh, 132 Wis. 638, 112 N. W. 1083; nor in which contracts not controlled by statute are involved, Swedish v. Koebernick, 136 Wis. 473, 117 N. W. 1020, 128 Am. St. 1090; nor in which the question as to the authority of the president of the company to a contract of sale of land is raised on demurrer, St. Paul Land Co. v. Dayton, 37 Minn. 364, 34 N. W. 335.

We are not prepared to hold that, if plaintiff had proved the first and second circumstances only, a prima facie case would have been made out; nor does his record call for such a holding, as the subsequent examination of the charge presently appearing herein, actually given, will demonstrate. We are, however, clear that in view of all the circumstances there was an issue of fact for the jury whether the defendant had ratified the invalid contract. It is true that "ratification of this character may rest on the principle of equitable estoppel." 2 Thompson, Corp. (2d ed.) § 2019. But the question is of ratification, not of estoppel alone. On the question whether the original contract under the actual evidence as to the acceptance of the application was valid in itself, the subsequent conduct is not relevant; on the question whether that original contract was afterwards adopted by defendant in such a way as to impose an obligation, the defendant's subsequent conduct was material and highly significant.

3. The question then arises whether the charge of the trial court in this view of the law stated the law so completely and clearly that the trial judge was not justified in granting a new trial. An examination of that charge has satisfied us that his final conclusion was correct.

It was charged that if the agent who signed the acceptance of the application "had the authority to sign the defendant's name to the document then there is a valid contract between these parties." Inter alia, it affirmatively appears that the by-laws required such an acceptance to be signed by the president and secretary. It was signed by neither. This charge was error. It was also charged that "by

the introduction [of defendant's acceptance] in evidence purporting to be the signature of the defendant, the plaintiff prima facie showed a valid contract and it then devolved upon the defendant to prove that it was not its contract, nor signed by its authority, if it desires to escape the responsibility that it was not its contract." Assuming that this first part of this charge was correct, it was not a fair representation of the respective contentions of the parties; in particular it excluded the defense available to defendant of proving that its assistant secretary's authority rested purely in parol. The charge then proceeded to rest the liability of defendant as to this point on estoppel only. Both the circumstances attending the execution and the subsequent conduct of defendant were for the consideration of the jury. The matter of ratification was not referred to. Other portions of the charge also appear to be unsatisfactory. Doubt in the matter arises from the circumstance that some of the obvious mistakes operated adversely to defendant only, and defendant is not complaining. However, that charge, taken as a whole, did not present to the jury a satisfactory statement of the true rules of law applicable to the facts.

4. We have examined the affidavits as to newly-discovered evidence. Standing by themselves, we seriously doubt whether they would justify a new trial. They may properly, however, have been considered by the court in granting a new trial.

5. The controversy of damages is not properly before us. At the close of the trial defendant took no exception to the charge of the court on this point, nor is the matter argued in defendant's brief. Rulings of the trial court as to evidence are assigned as error. In view of the conclusion previously reached and the fact of a new trial, it would serve no useful purpose to discuss them.

Affirmed.

On October 21, 1910, the following opinion was filed:

Per Curiam.

Defendant in its motion for a new hearing is mistaken in assuming that there was any ruling in the original opinion inconsistent with the proposition announced by Gilfillan, C. J., in Judd v. Arnold, 31

Minn. 430, 18 N. W. 151: "A ratification by the principal of the not properly authorized act of the agent must be by an act of the character required for original authority. Where that must be in writing, the ratification must also be in writing." In the present case, speaking on the subject of ratification, we had in mind certain resolutions which were reduced to writing, and also the correspondence between the parties and the entries in the books of the money paid, and the reference in the resolution of the return of such money, which were also in writing, but did not intend to be understood as holding that there had been a ratification. We make this statement, so as to render it clear that no modification of the rule previously referred to has been made.

Original opinion adhered to.