[No. 6947. Decided April 25, 1908.]

THOMAS A. RUSSELL, *Respondent,* v. B. SCHADE BREWING COMPANY, *Appellant.*[1]

WITNESSES—CROSS-EXAMINATION. It is proper to exclude cross-examination of a party as to what he would have done under supposed circumstances which did not exist.

TRIAL — DECISION — REVIEW — FINDINGS. In view of Bal. Code, § 5029, requiring the court on trial of issues of fact to give its decision in writing, the oral opinion of the court, delivered at the conclusion of the testimony, that judgment should go for the defendant, does not preclude the court from afterward deciding to enter written findings and a judgment in favor of the plaintiff; as until the decision is made in writing it is under the control of the court.

EVIDENCE—ADMISSIONS—ENTRY IN ACCOUNT BOOK. In an action for services as a physician, rendered to defendant's employee under a specific contract of employment made by the defendant, an entry in the physician's account books against the employee "care of the defendant" is not a conclusive admission that the services were originally rendered to the employee only, the physician testifying that the entry was simply for the purpose of identifying the account.

CORPORATIONS—REPRESENTATIONS— OFFICERS — AUTHORITY — CONTRACTS—EVIDENCE—SUFFICIENCY. There is sufficient *prima facie* evidence that the president of a brewing company assumed to have general management and was so held out by the corporation, thereby authorizing him to employ a physician to attend an injured employee, where it appears that he was present at the time of the accident, took charge and gave directions as to securing a physician, ambulance, and nurse, as one apparently in charge, and afterwards talked as one having general powers, and had notice that the services were being rendered in reliance upon his authority to make the employment.

[1]Reported in 95 Pac. 327.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 15, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on a contract of employment. Affirmed.

*H. M. Stephens,* for appellant.

*James Dawson* and *F. E. Langford,* for respondent.

HADLEY, C. J.—This is an action to recover for services of plaintiff as a physician and surgeon. Suit was brought against B. Schade and B. Schade Brewing Company, a corporation, as defendants. The complaint alleges that, on or about the 8th day of December, 1905, one Blickensdorfer was in the employ of the defendants, and that while engaged in the work of his employment he fell from a ladder or scaffold and was severely injured; that about that date the defendant B. Schade, acting in his own behalf and in behalf of B. Schade Brewing Company, employed the plaintiff in his capacity as physician to take charge of Blickensdorfer and to care for his injuries; that pursuant to said employment he took charge of the patient and furnished the usual medical care and attendance necessary in such cases, and continued so to do until about June 13, 1906, the value of the services being placed at $1,186. It is alleged that the defendant Schade was the president of the defendant corporation and appeared to be in the management and charge of its plant and affairs. The defendants by their answer admit the injuries to the employee, but deny that they employed the plaintiff to treat him. The cause was tried by the court without a jury, and resulted in a judgment for the plaintiff against the brewing company for $1,186. Judgment against Schade was denied. The corporation has appealed.

The first suggestion of error is that the court refused to permit cross-examination of the respondent with reference to what he would have done if Schade had not made the alleged

promise to pay him for the services. Cross-examination for the purpose of ascertaining all the facts and circumstances that actually existed was proper; but it was wholly immaterial what respondent might or would have done under merely supposed circumstances which he asserted did not exist, and it was not error to exclude cross-examination on such a purely speculative subject.

It is next urged that the court reviewed and reversed its own decision after it had been rendered, and that it was error to do so. At the conclusion of the introduction of testimony the court delivered an oral opinion which was to the effect that judgment should go for the appellant. The court orally stated its reasons in the mere form of an opinion, but no actual decision was given in writing as required by Bal. Code, § 5029 (P. C. § 645), when a cause triable by jury is tried by the court without a jury. The section is as follows:

"Upon the trial of an issue of fact by the court, its decisions shall be given in writing and filed with the clerk. In giving the decision, the facts found and the conclusions of law shall be separately stated. Judgment upon the decision shall be entered accordingly."

The next section, 5030, provides that the findings of the court upon the facts shall be deemed the verdict. It is manifest, therefore, that there is no verdict upon which judgment can be rendered until the findings have been given in writing and filed with the clerk. Following the announcement of the court's oral opinion, the respondent moved for judgment notwithstanding the same, and the written findings and conclusions afterwards entered constituted a verdict in favor of respondent, upon which judgment was accordingly entered. That written findings are necessary under the above statute in actions at law tried by the court without a jury, was early held by this court, although they may not be required in equitable actions. *Bard v. Kleeb*, 1 Wash. 370, 25 Pac. 467, 27 Pac. 273; *Kilroy v. Mitchell*, 2 Wash. 407, 26 Pac. 865; *Sadler v. Niesz*, 5 Wash. 182, 31 Pac. 630, 1030. At no

time did the court make a decision in writing favorable to appellant, and we think, particularly in view of our statute, that a distinction must be made between a mere opinion of a trial court and its decision. In *Houston v. Williams*, 13 Cal. 24, 73 Am. Dec. 565, Mr. Justice Field made the following observations:

"The terms 'opinions' and 'decisions' are often confounded, yet there is a wide difference between them, and in ignorance of this or by overlooking it, what has been a mere revision of an opinion, has been sometimes regarded as a mutilation of a record. A decision of the court is its judgment, the opinion is the reasons given for that judgment. The former is entered of record immediately upon its rendition, and can only be changed through a regular application to the court, upon a petition for a rehearing, or a modification. The latter is the property of the judges, subject to their revision, correction, and modification, in any particular deemed advisable, until, with the approbation of the writer, it is transcribed in the records."

Somewhat similar observations were made in *Thomas v. Tanner*, 14 How. Pr. 426, as follows:

"Some misapprehension seems to have resulted from the use of the term 'decision' in the 267th section of the Code. I have recently seen a case where my own opinion in an action tried without a jury had been carried *bodily* into the judgment-record, and made the basis of a judgment which the attorney had conceived himself entitled to, as the result of the views expressed in that opinion. But the decision, which, by the 267th section of the Code, is required to be 'given in writing and filed with the clerk,' is a very different thing from the opinion which the judge may think it proper to write. The opinion may, and often does, serve to enable the attorney to prepare the 'decision' for the judge to sign. This is the primary office of the opinion. But whether there be an opinion or not, there must, in every case of a trial by the court, be a *decision*. That decision must be made by the judge. This can only appear by his signature or *allocatur*."

It follows that when an action at law is tried by the court without a jury, the mere announcement of an oral opinion is not the decision within the meaning of our statute, since the

"decision," as it is named in the statute, "shall be given in writing and filed with the clerk." Until that has been done the decision that shall be rendered is still within the mind of the court and under its control. In the case at bar the court did not review any actual decision, and but one was rendered within the meaning of our statute.

It is argued that the court erred in not giving proper consideration to what is alleged to have been the admission of respondent. This contention is based upon the following entry in respondent's books of account: "Account of John Blickensdorfer, residence care of the Schade Brewing Company." It is insisted that the above entry is an admission that the charge was not at the time made against the appellant, but against the injured man. Respondent testified that it was not so intended, but that the entry was simply his method of identifying the account as that of appellant for services rendered Blickensdorfer. The account book was one with certain printed headings, and blanks left for entries. The word "residence" was printed and was not erased. The actual entry, respondent testified, was made without any reference to the matter of residence. The oral evidence was explicit as to the employment and it is not to be excluded from consideration by the introduction of a mere loose memorandum not intended to be a permanent memorial of the agreement, to which class of writings entries made in books of account belong. 21 Am. & Eng. Ency. Law (2d ed.), 1086, 1087.

It is assigned that the court erred in not giving judgment for the appellant. We think without doubt that there is sufficient evidence to show that Schade intended, in behalf of the corporation, to employ the respondent, and that he intended that respondent should so understand it. The remaining question in this connection is whether he had the authority to bind the corporation. It is admitted in the pleadings that Schade was at the time the president of the corporation. Under many authorities the mere fact that he was the president did not of itself empower him to make the contract. The

rule followed in Illinois, as stated by the supreme court of that state in *Bank of Minneapolis v. Griffin,* 168 Ill. 314, 48 N. E. 154, is to the effect that, as a general rule, a corporation acts through its president, and through him executes its contracts, and that an act pertaining to the business of the corporation not clearly foreign to the general power of the president, done through him, will, in the absence of proof to the contrary, be presumed to have been authorized by the corporate body. The court recognized that an exception to the general rule may be created by the provisions of the by-laws of a corporation limiting the powers of the president, but held that, in the absence of proof that such by-laws existed, the presumption of authority prevailed. If the above rule should be applied here, then Schade, being the president and head of the corporation, would be presumed to have been authorized, since there is no proof to the contrary. There is no proof that the by-laws of the corporation, or any other act of the corporate body, had placed any limitations upon his power in the premises.

The Illinois rule is, however, criticized by appellant as not being in harmony with the weight of authority. It is true the authorities generally do not permit the presumption of authority to arise from the mere fact that one is president, but it has often been held that, from such fact coupled with a course of conduct in the way of active participation in the management of the corporation's affairs, authority will be implied, in the absence of proof that it has been expressly withheld. *White v. Elgin Creamery Co.,* 108 Iowa 522, 79 N. W. 283; *Meating v. Tigerton Lumber Co.,* 113 Wis. 379, 89 N. W. 152; *Wells, Fargo & Co. v. Enright,* 127 Cal. 669, 60 Pac. 439, 49 L. R. A. 647; *Towers v. Stevens Cattle Co.,* 83 Minn. 243, 86 N. W. 88; 10 Cyc. 903, and authorities cited. This court has already expressly held that, when a corporation allows certain officers to participate in the management of its business, such as president, vice president, and superintendent, it must be responsible for their acts unless it

affirmatively shows they were unauthorized. *Anderson v. Wallace Lumber & Mfg. Co.*, 30 Wash. 147, 70 Pac. 247; *Carrigan v. Port Crescent Imp. Co.*, 6 Wash. 590, 34 Pac. 148. It is true the testimony in the case at bar did not comprehensively cover the subject of the conduct of Schade in his relations with the corporation in general. It did show, however, that at the time respondent was injured Schade was at the brewery; that he immediately assumed to give directions as one apparently in charge, and that employees present appeared to expect him to do so. His consent to the calling of respondent was sought and obtained. He first suggested the calling of another. Respondent was called under his directions, and when he arrived at the brewery he mentioned to Schade the necessity of taking the patient to the hospital at once. Schade thereupon gave directions to the employees of the company to order an ambulance for that purpose, which was done. He afterwards talked with respondent, also with the injured man, and with a nurse who served the latter, as one having general powers of management. The confinement of the injured employee covered a period of several months, during which time respondent performed two amputations upon one of the patient's legs, and otherwise treated him almost from day to day. These facts were well known to Schade, and he was bound to know that the services were being rendered in reliance upon his authority to make the employment. Having this knowledge as the president and head of the corporation, it should not be said that the corporation itself was under such circumstances wholly without knowledge of the situation. Schade was not only known to the respondent as the president of the corporation, but there was sufficient evidence to make a *prima facie* showing that he assumed to direct its affairs, and that he was permitted by the corporation to hold himself out and to act as one exercising apparent general authority. After such a *prima facie* showing, it devolved upon the corporation to show that Schade did not have the authority if such was the fact. This was not done,

and we think, in view of all the evidence, the court did not err in entering judgment against the corporation. In so holding we do not wish to be understood as at this time giving our full allegiance to the Illinois doctrine as heretofore stated, that the presumption of authority arises from the mere fact that the employment is made by the president of a corporation. As we have seen, the facts of this case are such as place it in another and larger class of cases which require some appearance of active direction of corporate affairs in order to raise the implication of authority.

Having discussed all the subjects assigned in the briefs, and finding no reversible error, the judgment is affirmed.

MOUNT, CROW, ROOT, and DUNBAR, JJ., concur.