[No. 9394. Department One. June 12, 1911.]

## DICKINSON FIRE & PRESSED BRICK COMPANY, *Respondent*, v. CROWE & COMPANY, *Appellant*.[1]

SALES—WARRANTY OF QUALITY—WAIVER—RESCISSION — DAMAGES FOR BREACH. Upon a sale of brick for a Federal building, the purchaser waives the right to rescind the sale for defects as to quality by delaying for sixteen months to give the seller any definite information regarding the number of brick rejected by the supervising architect; and in an action for the price can only offset such damages as it has sustained.

SALES — ACTION FOR PRICE — COUNTERCLAIM — DAMAGES. Where brick of varying size and color were mixed at the request of the buyer, who knew that they were dirty and needed cleaning, in an action for the price an offset of $100 damages for expense in sorting and cleaning the brick is an ample allowance, there being no definite testimony to show that such expense should not have been anticipated from a mixture of the grades.

SALES—ACTION FOR PRICE — INTEREST — COUNTERCLAIM. Upon a cash sale of brick, an unliquidated counterclaim for damages for breach of warranty as to quality will not prevent the recovery of interest from the time the demand accrued on the balance found due.

Appeal from a judgment of the superior court for King county, Gay, J., entered July 6, 1910, in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*John E. Ryan* and *Grover E. Desmond*, for appellant.

*Douglas, Lane & Douglas*, for respondent.

[1]Reported in 115 Pac. 1087.

Gose, J.—This is an action to recover the balance due upon a quantity of brick. From a judgment in favor of the plaintiff, the defendant has appealed.

The respondent sold to appellant four car loads of pressed brick, f. o. b. cars at Dickinson, North Dakota. The shipments began April 14, 1906, and ended upon August 16, 1906, that being the date of the last shipment. The suit was commenced in September, 1909. The appellant admitted the sale and delivery of the brick, and alleged affirmatively that the brick was sold and delivered to be used in the Federal building at Seattle, subject to inspection and acceptance by the officials of the government; that brick of the value of $132.29 was rejected by the contractor and government officials for nonconformity with samples furnished; that it stored the rejected brick at the request of the respondent, incurring a cartage liability of nine dollars; that the reasonable value of the storage is $21; that in consequence of the failure of the respondent to supply brick of the quality and size of the samples furnished by it to the contractor and government officials, the appellant has become liable for, and has been charged by the contractors, the sum of $252 for extra labor in sorting and laying the brick. The court allowed the appellant a set-off of $15 per thousand on 7,000 brick, $105, and $100 for expense incurred in cleaning and sorting the rejected brick, and entered judgment for the respondent for $638.40, with interest from October 9, 1906.

The appellant first contends that this was a sale by sample, and that in such cases "there is an implied warranty that the bulk of the goods shall correspond in kind and quality with the sample exhibited." If the premise were sound, the rule stated would follow. The evidence, however, is that, while the respondent knew that the brick was purchased for use in the Federal building, and forwarded samples, it expressly advised the appellant that the five samples were to be considered as a whole; that if it were required to furnish brick equal to the best sample, it could not fill the order; that it

had ten and possibly fifteen thousand brick of the best sample furnished, and that "the dust has blown into the pile some; all are soiled more or less." It further advised the appellant as follows: "Our reason for sending duplicates of the samples to you was to make sure that you fully understand what we can do and to enable you to explain to the supervising architect, if you think it is worth while. Otherwise, we will be pleased to have the contractors look elsewhere for the brick." After the receipt of this information, the appellant advised the respondent to ship and to "mix" the several kinds in the first car. It further advised it that: "The superintendent says that you are to ship this 18 R 2 of which you claim to have about 10,000, and then 18 R 5 and 18 R 3 are satisfactory to him and he will accept them. Of course, keep this quiet." 18 R 2 was the best of the samples. It is contended that about 7,000 brick were rejected. Of this number the appellant sold about 4,000 and appropriated the proceeds. It claims to have the remainder in store, and insists upon the right to rescind the sale as to these and to hold the respondent responsible for cartage and storage. If we should concede that there was a breach of warranty, the rule is that a failure to give notice, or to offer to return the property within a reasonable time after discovering the defects, operates as a waiver of the right to rescind, and leaves the purchaser only the right to recover or offset damages to the extent of the diminished value of the article. *Tacoma Coal Co. v. Bradley*, 2 Wash. 600, 27 Pac. 454, 26 Am. St. 890; *Kleeb v. Long-Bell Lumber Co.*, 27 Wash. 648, 68 Pac. 202; 35 Cyc. 434.

On April 6, 1908, sixteen months after the date of the last shipment, the appellant advised the respondent that 3,484 brick of the third shipment had been rejected by the contractors. This was the first advice of the quantity rejected. On May 29, 1906, the appellant wired the respondent: "Number of brick condemned. Not according four samples accepted. Poor quality, badly discolored, etc." On the same

date it advised by letter to the same effect. There was never an offer to rescind or to hold the rejected brick subject to respondent's order, nor any definite information to it as to the number rejected, until the letter of April, 1908. The appellant must, therefore, rely upon its right to offset such damages as it has sustained.

The testimony of the appellant's witness Mr. Grant, who was superintendent of the construction of the Federal building, makes it clear that a part, if not all, the condemned brick were rejected because they did not conform to the best of the five samples. A Mr. Mathews, foreman for the contractors, testified that the expense of "resorting and gauging" was about $300, and that the greatest expense was in cleaning the brick. Mr. Duhamel, one of the contractors, testified that some of the brick first shipped were dirty and seemed to have been on hand for a long time; that the next shipment varied in size and color, and that the damage consisted of the extra labor in sorting "and labor on the brick." Respondent's witness, Dr. Brannon, testified that on August 13, 1907, a year after the date of the last shipment, one of the contractors, Mr. Duhamel, told him that the added expense of sorting and laying the brick would not exceed $100. This statement is not denied by the contractor. The appellant knew that the five samples varied in quality; that "dirt" had blown into the brick, and that "all" were "soiled more or less." As the trial court pointed out, there is no definite testimony in the record as to how the brick shipped differed in color and size from what would be reasonably anticipated from a mixture of the several samples. We think, upon the entire record, the amount allowed as a set-off is ample. Indeed, a much less allowance could have been made.

It is finally said that the court erred in allowing interest prior to the date of the entry of the judgment. There is nothing in the record to indicate that the parties did not contemplate a cash sale. The purchase price was agreed upon prior to the date of the first shipment. Interest is allowable

on a liability to pay money from the time the demand accrues, where the amount can be ascertained by computation. *Parks v. Elmore*, 59 Wash. 584, 110 Pac. 381. The existence of a set-off or counterclaim, which is unliquidated, will not prevent the recovery of interest on the balance of the demand found due from the date of its maturity. 22 Cyc. 1514.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.