[No. 30231.   Department Two.   February 2, 1948.]

LOUISA M. WALKER BIEHN, *Appellant*, v. BURTON W. LYON, JR., *as Administrator, Respondent.*[1]

[1]Reported in 189 P. (2d) 482.

*Robert B. Abel,* for appellant.

*Burton W. Lyon, Jr.,* for respondent.

ROBINSON, J.—On September 30, 1938, John Biehn, a widower, then the owner of the following described real property situate in Pierce county, Washington:

"Lots Five (5) and Six (6) in Block Seventeen Hundred Sixteen (1716) as the same are shown and designated upon the map entitled, 'Map of New Tacoma, Washington Territory',"

on which property there was a house known as 1710 south Yakima avenue, Tacoma, Washington, entered into a contract with W. J. A. Simpson and Edna Wallace Simpson, his wife, whereby Biehn agreed to sell and they agreed to buy the property referred to for fourteen hundred dollars. This contract was filed for record in the office of the auditor of Pierce county on October 9, 1944, and was recorded in volume 760 of deeds, at p. 349.

On September 30, 1938, the date the contract was executed, it was deposited in the United Mutual Savings Bank, of Tacoma, for collection, and there was then a balance due of $1,095.25. The bank collected $12.50 a month, and, at the time of trial on December 19, 1946, there was a balance due of $198.38.

On March 27, 1942, John Biehn married Louisa M. Walker, but, on the preceding day, March 26th, he quit-claimed all of his interest in the real property above described to his intended bride for an expressed consideration of ten dollars. There is no evidence as to what balance was due on the contract as of that date. She testified that she did not know at that time that the property had been sold, but the circumstances were such as to negative her contention that she was a bona fide purchaser and no evidence to support her status as such was presented.

Within two and one-half years, on September 22, 1944, Louise M. Walker Biehn commenced an action for divorce. (The files are an exhibit in this case.) The only allegation concerning property in the complaint in that proceeding was as follows:

"That the real estate now standing in the name of the plaintiff was purchased by her since the said marriage, but was paid for by the separate means and funds of the plaintiff. That the plaintiff and the defendant have no community property whatever."

In his answer and cross-complaint, John Biehn alleged:

"That the real estate mentioned in plaintiff's complaint has been the home of the parties hereto since their marriage and is community property."

(It is clear that the real estate referred to in the complaint and answer is not the property referred to in the first paragraph of this opinion.)

He also alleged that he

". . . owned and had in his possession a real estate contract with a balance of about $460.00 due thereon; a note and insurance policy with a balance due on the note of about $660.00."

We are somewhat puzzled by the form of the interlocutory decree and the findings of fact and conclusions of law made and entered on December 21, 1944. The decree, instead of being based on the findings and conclusions, apparently was prepared first, and the findings and conclusions refer to statements and descriptions in the decree. The only finding of fact that referred to property was the following:

"That the real estate mentioned in the complaint *and described in the decree*, has been the home of the parties herein since their marriage and is the separate property of the plaintiff." (Italics ours.)

The only conclusion of law referring to the property of the parties was as follows:

"That the real estate *described in the decree* should be set aside to the plaintiff as her sole and separate property and that the contract and note *referred to in the decree* should be set aside to the defendant." (Italics ours.)

The interlocutory decree awarded certain property, specifically described by metes and bounds and located in Thurston county, to Mrs. Biehn, and then contained the following provision:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED: That one certain land contract entered into between John Biehn, a widower, and W. J. A. Simpson and Edna Wallace Simpson, and filed for record in Volume 760 of deeds, at page 349, on the 9th day of October, 1944, be and the same hereby is set over to the defendant as his sole and separate property."

It will be observed that this is the contract covering the real property which was referred to in the opening paragraph of this opinion.

The interlocutory decree was approved by the attorneys for both parties, and it was not appealed from. A final decree was entered on the tenth day of July, 1945, wherein the interlocutory decree was "in all things confirmed and made final," and this likewise was approved by the attorneys for both parties.

The date of John Biehn's death does not appear, but it is conceded that Marie Beaurman was appointed administratrix of his estate, and that, on July 23, 1946, Louisa M. Walker Biehn filed a claim against the estate in the sum of fourteen hundred dollars "for payments collected on contract of sale" heretofore referred to. This claim was rejected on September 9, 1946.

The present action was commenced against Marie Beaurman, as administratrix, on the rejected claim. It appears from statements made by her counsel while discussing the judgment to be entered, that appellant was attempting to recover only the payments made on the contract subsequent to the quitclaim deed from Mr. Biehn on March 26, 1942, and it is difficult to see on what theory she could recover for payments on the contract made prior to that date.

The evidence disclosed that all payments on the contract had been made to the United States Mutual Savings Bank, and that all the money collected prior to his death had been paid to John Biehn, except four payments of $12.25 each (representing monthly payments of $12.50 each less a twenty-five-cent collection charge) which had been delivered to Mrs. Biehn between August 30, 1944, and Novem-

ber 27, 1944. It is to be noted that she received no payments after the entry of the interlocutory decree.

At the conclusion of the trial, the trial court entered an oral decision indicating that Mrs. Biehn would be permitted to recover $1,095.25 (the balance of the contract on September 30, 1938), less the forty-nine dollars she had received in the four payments of $12.25 each and less the $198.38 which was still due on the contract at the time of trial, and which the trial court indicated she would be entitled to receive when and if paid.

Thereafter, a motion for new trial was interposed on two grounds:

"(1) Insufficiency of the evidence to justify the verdict and that it is against the law.

"(2) Error in the law occurring at the trial and excepted to at the time by the defendant."

The trial court thereafter filed a memorandum decision stating that it did not adhere to the decision as orally announced at the conclusion of the trial and would grant the motion for a new trial. The trial court expressed the view that the interlocutory decree of December 21, 1944, was sufficiently definite and certain in its provisions to vest the contract and the right to receive payments thereunder in Mr. Biehn; and as to payments received prior to that date, Mrs. Biehn was estopped to assert a claim. The formal order granting a new trial was entered February 6, 1947, and did not state any grounds, the pertinent portion of the order being:

"It Is Hereby Ordered, Adjudged and Decreed, That the defendant's motion for a new trial be and the same is hereby granted, and a new trial of the above entitled action is hereby ordered."

From the order granting a new trial, this appeal is taken. Subsequent thereto, Marie Beaurman died and it was stipulated that Burton W. Lyon, Jr., as administrator with will annexed *de bonis non* of the estate of John Biehn, deceased, should be substituted as respondent.

We fail to see what cause for complaint the appellant has. There is and was no judgment in her favor. The

trial court was at liberty to change its ruling, as announced in the oral decision, at any time prior to the entry of a judgment. *Russell v. Schade Brewing Co.,* 49 Wash. 362, 95 Pac. 327; *Ritter v. Johnson,* 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270; *State ex rel. Wilson v. Kay,* 164 Wash. 685, 4 P. (2d) 498; *McClelland v. McClelland,* 170 Wash. 170, 15 P. (2d) 941.

Appellant's theory of the case is that her right of recovery of payments made under the contract and received by Mr. Biehn did not begin until the date of the deed. There was no evidence as to the amount due on the contract on that date and no evidence as to the amount of collections between that date and the date of trial or the date of the interlocutory decree, and, consequently, there was no evidence to support a judgment in appellant's favor. The figure referred to in the memorandum decision, $1,095.25, was the balance on September 30, 1938, and any judgment based on that figure would have been palpably erroneous. It would also seem that, if she was entitled to anything, it was to the amount of the payments actually collected by Mr. Biehn, not merely the amount that was credited upon the principal of the purchase price.

The appellant has proceeded throughout on two erroneous theories:

(1) That the quitclaim deed of John Biehn to the real property in question carried with it the right to collect the payments on any outstanding contract of sale covering that property. Appellant cites no cases in support of this theory.

We have on numerous occasions recognized that the vendor in a real-estate contract may assign the contract to one person and convey legal title to another; or he may convey the legal title and retain the contract and the right to receive payments thereon. *Shelton v. Jones,* 4 Wash. 692, 30 Pac. 1061; *Button v. Traders' Trust Co.,* 157 Wash. 625, 289 Pac. 1010; *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705; *Seattle Ass'n of Credit Men v. Bank of California,* 177 Wash. 130, 30 P. (2d) 972 (*arguendo*). There is no evidence

that Mr. Biehn ever delivered or assigned the contract to Louisa M. Walker or Louisa M. Walker Biehn, or that he intended so to do. It is undisputed that she received none of the payments on the contract for a period of more than two years after she received the quitclaim deed, and then received only four payments, which she thought represented rent from the property.

■ (2) That, since neither the real property nor the contract was specifically described in the pleadings, the trial court in the divorce proceedings had no right to dispose of them in the interlocutory decree.

It is clearly the duty of the trial court to dispose of all property of the parties which may be brought to its attention during the trial of a divorce case. Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15], and Rem. Rev. Stat., § 989 [P.P.C. § 23-23]; *Luithle v. Luithle,* 23 Wn. (2d) 494, 161 P. (2d) 152, and cases there cited; *Holm v. Holm,* 27 Wn. (2d) 456, 178 P. (2d) 725, 93 A. L. R. 327.

There having been no appeal from the interlocutory decree of divorce and a final decree having been entered, the contract became Mr. Biehn's separate property, and the appellant had no interest in it subsequent to the date of the interlocutory decree. Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15]; *White v. White,* 24 Wn. (2d) 52, 163 P. (2d) 137.

Appellant relies on the case of *Carpenter v. Brackett,* 57 Wash. 460, 107 Pac. 359. That was an action to quiet title, and the court said *inter alia:*

"Neither did the divorce decree award this property to either party. Respondent was the plaintiff in that action, and in her complaint she mentions many descriptions of real property, but makes no mention of this property. These lots not being referred to in the divorce action, the court therein had no jurisdiction over them, and could make no decree affecting them."

Of course, if property is not "referred to in the divorce action," *i. e.,* is not brought to the attention of the court, the court cannot be expected to dispose of it; but when property is brought to the attention of the court by the pleadings

or by the evidence, the statute requires that the court shall make such disposition of the property as appears just and equitable. Rem. Rev. Stat., § 989 [P.P.C. § 23-23]; *Brown v. Brown*, 192 Wash. 333, 73 P. (2d) 795.

The evidence was insufficient to support the judgment which the trial judge in his oral decision indicated that he was prepared to enter, and, in part at least, that decision was against the law. Having finally concluded that appellant was not entitled to recover, the trial court might well have, and on the state of the record we think should have, entered an order for dismissal. It seems highly undesirable that litigants should be put to the delay and expense of a second trial of a nonjury case when the judge before whom it was first tried is in a position to decide it. However, respondent asked for a new trial, and, the trial court having granted it, respondent should not complain; and a new trial is certainly all that appellant had any right to expect under the circumstances.

There is one other question raised on this appeal, which, although it does not affect our disposition of the case, cannot, because of the pernicious error involved, be permitted to pass unnoted.

It appears that, in passing on the motion for a new trial, the trial court considered excerpts from the testimony of Mr. and Mrs. Biehn in the divorce case, together with the memorandum decision of the judge who tried that case, which had been transcribed by the official court reporter from his notes for use in the hearing on that motion. Appellant complains of this, and justifiably so. Respondent seeks to defend it on the basis that the entire record of the divorce case was offered in evidence

" . . . and that under the provisions of Chapter 126 of the Laws of 1913, Rem. Rev. Stat. Secs. 42-2, 42-5, 42-6; P. P. C. 108-1 to 13 incl., the official court reporter's official notes are a part of the official record of the said action and are proper evidence in civil actions, and if the trial judge examined them in connection with the other parts of the said record, the appellant is in no position to complain."

(Rem. Rev. Stat., § 42-5 [P.P.C. § 108-9], was amended in 1943, but not in any respect that is here material.)

This position will not stand analysis. In the first place, it is clear that when appellant's counsel offered "the entire record" in evidence, he had reference only to the contents of the clerk's file, which was received and marked plaintiff's exhibit No. 2. In the second place, while Rem. Rev. Stat., § 42-2, requires the official reporter to file his notes in the office of the clerk, there is nothing in the statute which makes them a part of the record in the case. In the third place, there is no showing that the stenographic notes in the divorce case had ever been so filed. In the fourth place, while the transcript of the stenographic notes may

". . . be read in evidence as competent testimony, when satisfactory proof is offered to the judge presiding that the witness originally giving such testimony is then dead or without the jurisdiction of the court [and Louisa M. Walker Biehn was neither], subject, however, to all objections the same as though such witness were present and giving such testimony in person": Rem. Rev. Stat., § 42-6; it is very clear that no such use was made of it here. In the fifth place, Rem. Supp. 1943, § 42-5 [P.P.C. § 108-9], providing for a typewritten transcript of testimony to

". . . be filed with the Clerk of the Court where such trial is had for the use of the court or parties to the action," obviously refers to its use in the action in which the testimony was taken. And, finally, courts are required to decide cases on the basis of the evidence submitted to them and not on the basis of evidence introduced in other trials.

We are not saying that the evidence in the divorce case, or portions of it, might not have been admissible if properly offered and the necessary foundations laid. The record shows no offer, no foundation laid, no opportunity to object to its admission. Surely, no authority is needed to make apparent the impropriety of an exploration by a trial judge of the testimony in other cases for the purpose of determining the issues before him in the instant case.

We have given no consideration to the excerpts from the testimony in the divorce case, nor to the memorandum

opinion therein. Entirely apart therefrom, and for the reasons heretofore assigned, the order granting a new trial is affirmed.

MALLERY, C. J., STEINERT, JEFFERS, and HILL, JJ., concur.