[No. 33470.  Department Two.  June 14, 1956.]

SEARS, ROEBUCK AND COMPANY, INC., *Appellant*, v. THEODORE GRANT, *Respondent*.[1]

[1]Reported in 298 P. (2d) 497.

*Harley W. Allen,* for appellant.

*Casey & Johnson,* for respondent.

HILL, J.—In an action by Sears, Roebuck and Company, Inc. (hereinafter referred to as Sears), to recover possession of certain crop sprinkling equipment or its value, the defendant, Theodore Grant (formerly Theodore Gruzdis), made a counterclaim for damages for the loss of a forty-acre wheat crop. Grant claimed that delay in the delivery of 320 feet of two-inch aluminum pipe necessary as laterals in the operation of his sprinkling system caused the loss of the crop. The ultimate issue on this appeal is whether Grant proved damages in the amount of $2,828 which the jury found he sustained. (The judgment was for that amount less the value of the crop sprinkler equipment retained by him, or $1,318.18.) Sears appeals.

By conditional sales contract dated April 6, 1953, Sears sold Grant certain crop sprinkling equipment, knowing that Grant was acquiring it to enable him to irrigate a forty-acre tract on which he had planted wheat the preceding fall. The equipment purchased included an electric pump, 1,240 feet of aluminum pipe (460 feet of four-inch, 460 feet of three-inch, and 320 feet of two-inch), nineteen standpipes and sprinkler heads, and various other fittings and connections.

Sears agreed to make immediate delivery, and all of the equipment covered by the contract was delivered to Grant at Moses Lake on April 14th and 23rd except the two-inch pipe, which was not delivered until May 25th or 26th.

Grant's major contention is that, if the two-inch pipe had been delivered by May 1st or shortly thereafter, he could have irrigated the forty-acre tract and harvested sixty bushels of wheat to the acre, whereas he harvested a total of only 115 bushels from twenty acres. The other twenty acres he plowed under sometime between May 5th and May

20th, and replanted in beans in an effort to mitigate his damages.

No exceptions were taken to any of the instructions given by the trial court, and the measure of damages applicable to such a breach of contract is not in dispute. It is argued, however, that Grant did not prove with reasonable certainty the amount of wheat he would have raised, and that he could have and should have further mitigated his damages.

The only evidence as to what the yield would have been if the respondent had been able to put water on the land at the proper time was his estimate that the acreage in wheat nearest his, a tract one-half mile away, produced "roughly" sixty bushels to the acre. That tract, farmed by Marvin Anderson, was newly reclaimed from sagebrush and had never been planted before. The bureau of reclamation rated the soil lower than that on respondent's tract. Anderson's preparation for planting was very similar to respondent's on that portion of the latter's land that was being planted for the first time. The Anderson tract was irrigated by a sprinkler system, commencing about May 1st, which is the date respondent claims he should have been able to begin to put water on his wheat.

Appellant assigns error to the admission of this evidence, both because of the lack of qualification on the part of respondent to make an estimate as to the yield from the Anderson tract and because conditions on the two tracts were not shown to be sufficiently similar to make the testimony relevant.

Respondent had raised wheat, though on a very limited scale, for the six preceding years, and the trial court ruled that he was qualified to testify and that all of appellant's objections went to the weight rather than the admissibility of his testimony. We agree. *Chung v. Louie Fong Co.* (1924), 130 Wash. 154, 226 Pac. 726; *Smith v. Hicks* (1908), 14 N. M. 560, 98 Pac. 138, 19 L. R. A. (N.S.) 938.

From this testimony, there was a permissible inference that respondent's yield from his land would have been similar to Anderson's if the land had been irrigated at the

proper time. Appellant offered no evidence either to establish that the respondent's estimate as to the yield from the Anderson land was high or to show wherein conditions differed materially between the two tracts.

Appellant urged that the respondent could have further mitigated his damages, if any, and suggested two methods: first, renting or buying two-inch pipe from a dealer other than the appellant, or buying three-inch pipe from the appellant and paying the difference in value between the three-inch and the two-inch pipe; second, revamping his plans and utilizing the three and four-inch pipe to irrigate a lesser area and thus save at least a portion of his crop.

■ Whether a reasonable man would have resorted to either of these methods to mitigate his damages under the same circumstances, was certainly a matter to be considered by the jury. Respondent testified that every time he "talked to a person or called them on the phone" he was assured that the two-inch pipe "was either on its way or in transit and would be there any day." The jury apparently found, as it was permitted to do under the instructions, that such assurances were given, that the respondent had a right to rely on them, and that they justified his failure to mitigate damages in the ways suggested. *Lopeman v. Gee* (1952), 40 Wn. (2d) 586, 245 P. (2d) 183, 32 A. L. R. (2d) 904; *Florence Fish Co. v. Everett Packing Co.* (1920), 111 Wash. 1, 188 Pac. 792.

■ The jury was entitled to find, under the court's instructions, that the appellant had promised and not made immediate delivery of the two-inch aluminum pipe, and, on the basis of the testimony of appellant's witness, that appellant could easily have procured the necessary two-inch pipe or substituted three-inch pipe and thus fulfilled its contractual obligation.

The jury was entitled to find that the moisture went out of the ground about May 1st; that, because the two-inch pipe had not been delivered, the respondent was unable to irrigate at that time and during the period which immediately followed; and that this caused the failure of his wheat crop.

■ Most of the judges who have considered this appeal are impressed with appellant's argument on the issue of damages. They regard this as a weak and borderline case but are nonetheless satisfied that there is more than a scintilla of evidence to sustain the jury's verdict. Appellant has, we believe, underestimated the strength of respondent's evidence to establish damage and the cause thereof in the absence of any direct attack upon it and, we are certain, has overestimated the extent of our judicial knowledge about the yield of wheat to be expected under certain conditions. Appellant earnestly and vigorously insists that to anyone familiar with wheat farming it would be obvious that "it would be a miracle" if respondent "got his seed back" in 1953 under the existing circumstances, entirely apart from the availability of irrigation. Appellant offered no evidence to support that statement, and we are compelled to disclaim any such familiarity with wheat farming.

We agree with the trial judge that the respondent made a case for the jury on the issues of breach of contract, the amount of damage sustained, and the reasonableness of his actions relative to mitigation of damage.

Judgment affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and FINLEY, JJ., concur.

---

July 30, 1956. Petition for rehearing denied.