[No. 7086–3–II. Division Two. June 10, 1986.]

JET BOATS, INC., *Respondent,* v. PUGET SOUND NATIONAL BANK, *Defendant,* JULIUS MAJDIC, *Appellant,* DEWAYNE SCHIERMAN, ET AL, *Respondents.*

34

*Benjamin G. Porter* and *George, Hull & Porter,* for appellant.

*Douglas V. Alling,* for respondents.

ALEXANDER, J.—Julius Majdic appeals from (1) the entry and amount of a judgment in favor of Jet Boats, Inc., (2) the sufficiency of a judgment granted him against Jet Boats

on his counterclaim for damages, and (3) the denial of his claim against DeWayne and Patricia Schierman. Jet Boats cross–appeals, objecting to the award of damages to Majdic. We affirm in part, and reverse in part.

Jet Boats was incorporated under the laws of the State of Washington in 1977 and conducted business in Tacoma. On July 2, 1981, the corporation was dissolved by the Secretary of State of Washington, pursuant to RCW 23A.28.125, for nonpayment of its annual license fees for the years 1979, 1980, and 1981. On December 10, 1982, DeWayne Schierman, the president of the corporation, who, along with his wife, Patricia, were the only shareholders of Jet Boats, paid the delinquent license fees and penalties owed to the State.

Majdic is a commercial fisherman who lives and works in Kodiak, Alaska. He has participated in the Bristol Bay, Alaska, commercial salmon season for 30 years. That fishing season is generally limited to a 6–week period beginning each year in the third week of June. Special permits are needed in order to fish the season and a number of the fishermen use a special type of gill net fishing boat, a "stern picker."

At the end of the 1977 fishing season, Majdic sold his old wooden stern picker because he wanted a new, larger capacity, aluminum boat. In January 1978, Majdic contacted DeWayne Schierman of Jet Boats, who had experience in aluminum welding and building boats of this size. After Majdic and Schierman had viewed several Bristol Bay stern pickers under construction, they began negotiations on the contract for the construction of such a boat for Majdic. On February 17, 1978, the parties executed a contract, which provided that Jet Boats would build a Bristol Bay aluminum stern picker for Majdic, in accordance with agreed specifications. Majdic paid a deposit of $12,500 and agreed to pay the balance of $30,000 on delivery of the boat. The written agreement included the words "delivery on or before May 10, 1978."

Jet Boats then began construction of the new vessel. Madjic made several trips to Tacoma from Alaska to check

on the progress of construction. On each visit, Schierman assured Majdic that the boat would be completed on time. Assurances continued to be given until the delivery date had passed. On June 30, the boat was taken out for a trial run and numerous problems were discovered. The boat was then subjected to further work, and on July 17, 1978, it was taken out for a second trial run. At that time, a marine surveyor employed by Majdic, Carl Anderson, indicated that some problems still existed but passed the boat noting that it was "without defects."

Prior to the delivery of the boat, Schierman required assurance from Majdic that the balance of the purchase price would be paid. Majdic indicated that he had funds to pay the balance due. Majdic also executed a marine mortgage and a promissory note in favor of the National Bank of Alaska. Schierman's bank, Puget Sound National Bank, understood that once the executed documents were recorded in Alaska, the National Bank of Alaska would wire the proceeds directly to the Puget Sound National Bank for Schierman's account. However, Majdic subsequently requested that the Bank of Alaska withhold payment.

On May 18, 1980, Jet Boats sued Majdic for the unpaid balance on the contract. It also sued Puget Sound National Bank for negligence and for breach of its fiduciary relationship claiming that it received assurances from Puget Sound National Bank that funds would be forthcoming from Majdic's bank in Alaska. Majdic counterclaimed for consequential and incidental damages as a result of Jet Boats' breach of contract. Jet Boats and Puget Sound National Bank subsequently reached an agreement whereby the bank would reduce the outstanding principal on a loan to Jet Boats and the Schiermans, as well as forgive accrued interest on the outstanding debt. As a result, Jet Boats' cause of action against Puget Sound National Bank was dismissed with prejudice.

At the bench trial on the claims and counterclaims of Majdic and Jet Boats, Majdic testified that he lost the entire 1978 Bristol Bay fishing season due to the failure of

Jet Boats to deliver the boat on the agreed delivery date. Majdic further stated that the boat, when delivered, was poorly built and had numerous defects.

The trial court awarded Jet Boats a judgment against Majdic for the outstanding balance on the contract of $29,658 plus interest of $11,667 on the entire amount accruing from July 26, 1978. The trial court did not reduce Majdic's obligation by the amount Jet Boats received in settlement from Puget Sound National Bank.

The trial court found that when Majdic took delivery of the boat, he made clear to Schierman that he was not forfeiting his right to damages. The trial judge also noted that the boat was found, following delivery, to be defective in a number of respects. The trial court allowed recovery only for those defects which were latent, and, therefore, not observable during Majdic's inspection of the boat. The trial court disallowed Majdic's claim for other damages, finding that Jet Boats did not breach an implied warranty of merchantability.

The trial court further found that, although Majdic received repeated assurances of performance from Schierman, it was clear by the end of June that the boat would not be completed in time for the 1978 fishing season. The trial court, therefore, concluded that although Majdic lost profits, he had a duty to mitigate his damages for half of that fishing season. Majdic's recovery for lost profits resulting from the missed fishing season was consequently reduced. Majdic was not allowed to recover his attorney's fees.

Majdic's net damage award for lost profits and for various construction defects on the boat was $26,574 (with no interest included). Majdic's recovery included his crew's share of the profits, which was to be held by Majdic in constructive trust for his crew. The crew consisted of Majdic's two sons who had made arrangements to fish with him in 1978.

Finally, although Majdic made a claim against DeWayne and Patricia Schierman individually, the trial court made

no findings or conclusions concerning Majdic's ability to recover from the Schiermans as individuals distinct from Jet Boats.

Numerous issues are raised by the appeal and cross appeal.

# I
## MAJDIC'S APPEAL
### A
### Maintenance of Suit by Jet Boats, Inc.

Majdic asserts that Jet Boats is not entitled to maintain the present action because of its failure to pay its annual license fees. We reject this argument.

■ RCW 23A.44.120 provides that corporations shall not be permitted to maintain lawsuits in courts of this state without alleging and proving that all fees and penalties due the State have been paid. However, corporate license fee statutes have been held to be revenue measures only, and the prohibition against maintaining a suit when fees are unpaid gives way if a corporation pays its license fees before trial. *Karnes v. Flint,* 153 Wash. 225, 279 P. 728 (1929). *See also Portland Ass'n of Credit Men, Inc. v. Earley,* 42 Wn.2d 273, 254 P.2d 758 (1953). Here, because Jet Boats paid its fees in December 1982, before trial, the corporation met the requirements of RCW 23A.44.120 and may properly maintain the present action.

■ Majdic argues further that Jet Boats' ability to maintain this suit does not rest solely upon compliance with RCW 23A.44.120. He contends that because Jet Boats was dissolved by act of the Secretary of State it must also meet the requirements of RCW 23A.28.250. That statute provides that the dissolution of a corporation shall not impair any remedy available to the corporation existing before such dissolution if the action thereon "is commenced *within two years after the date of such dissolution.*" (Italics ours.) Because the present action was commenced in May 1980 and Jet Boats was dissolved in July 1981, Majdic maintains that the action was not commenced within 2

years of dissolution. We do not believe that RCW 23A.28-.250 has any application in a case where the corporation commences its action before dissolution, provided the corporation complies with RCW 23A.44.120 by paying its delinquent fees prior to trial. However, even if the statute does apply, we believe it should not bar suit by Jet Boats because it would be manifestly unfair to permit a suit to be filed by a corporation within 2 years after dissolution, but yet bar an action when suit is commenced prior to dissolution.[1]

## B
### Interest Proper After Setoff

Majdic argues that the trial court erred in awarding Jet Boats interest on the full amount of its recovery. We agree and hold that interest is proper only on the amount owed to Jet Boats by Majdic after setting off Majdic's recovery against Jet Boats.

The general rule with respect to an award of interest on a damage recovery is that interest is allowed when the amount claimed is liquidated. *Seattle v. Dyad Constr.*, 17 Wn. App. 501, 520, 565 P.2d 423 (1977). A claim is liquidated when the amount is determinable with exactness and without reliance on opinion or discretion. *Seattle v. Dyad Constr.*, 17 Wn. App. at 520. An unliquidated counterclaim will not prevent the recovery of interest on the liquidated claim from the date of maturity. *Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 177, 273 P.2d 652 (1954); *Dick-*

---

[1]Majdic places great credence on the fact that RCW 23A.40.070 provides that a corporation may pay its fees and penalties any time *prior to* dissolution. He appears to argue that because of the "prior to" language, a corporation may not pay its fees and penalties after dissolution. This argument is misdirected because RCW 23A.40.070 is not applicable to the issue of maintaining a legal action. RCW 23A.40.070 simply provides a mechanism by which a corporation may purge itself of its delinquent status by paying its license fees prior to its dissolution. The section does not preclude payment of delinquent fees by a corporation in order to comply with RCW 23A.44.120, thus allowing it to maintain a suit. In *Karnes v. Flint*, 153 Wash. 225, 279 P. 728 (1929), a corporate plaintiff had been stricken from the roles by the Secretary of State for nonpayment of its license fee and was held to be entitled, upon payment, to go to trial.

*inson Fire & Pressed Brick Co. v. Crowe & Co.,* 63 Wash. 550, 554, 115 P. 1087 (1911).

Jet Boats' claim for $29,658 is liquidated because it is the amount owed by Majdic under the terms of the contract between Jet Boats and Majdic. Majdic's claim for damages for lost profits and construction defects, which resulted in a judgment for $26,574, however, is unliquidated because its determination required the trial court to form opinions and exercise discretion. Therefore, as a general proposition, Majdic's claim would not appear to prevent Jet Boats from recovering interest on the full $29,658.

The general rule, however, is subject to a special rule applicable in limited circumstances. The special rule requires that the liquidated claim be reduced by the amount found due on an unliquidated counterclaim and interest be allowed only on the balance remaining after reduction. The court in *Mall Tool Co. v. Far West Equip. Co., supra,* held that the special rule is applicable in the following circumstances:

> This rule is applicable only when the amount to which a defendant is entitled as a counterclaim or set–off is for defective workmanship or other defective performance by the plaintiff, of the contract on which his liquidated or determinable claim is based, of a character such that the award of damages as compensation is regarded as constituting either a reduction of the amount due the plaintiff or a payment to him. This is on the theory that the plaintiff is entitled to interest only on the amount of which he has been deprived of the use during the period of default.

*Mall Tool Co.,* 45 Wn.2d at 177.

The facts of the present case fit within this rule because Majdic's claim is for damages resulting from defective workmanship and performance by Jet Boats. The trial court found that Jet Boats performed the contract defectively, not only because of the poor workmanship on the boat, but because of the substantially late performance of the contract. Thus, Majdic's entire recovery falls within the *Mall Tool Co.* exception to the general rule and interest is

only calculated on the difference between the two recoveries.

This analysis is further supported by the more recent case of *Mitchell Int'l Enters. v. Daly,* 33 Wn. App. 562, 656 P.2d 1113 (1983), in which the court, interpreting *Mall Tool Co.,* focused on the words "of a character such that the award of damages as compensation is regarded as constituting either a reduction of the amount due the plaintiff or a payment to him." The court noted that the counterclaim must be "related to [the] plaintiff's claim". *Mitchell Int'l Enters.,* 33 Wn. App. at 567.

Majdic's claim clearly fits the *Mitchell* interpretation of the *Mall Tool Co.* rule because his counterclaim for lost profits and defective workmanship is related to the Jet Boats' claim for payment on the contract and because Majdic's claim constitutes a reduction of the amount due Jet Boats. The rule announced in *Mall Tool Co.* is applicable here and Majdic's claim must be deducted from Jet Boats' recovery before interest is computed.

## C
### Settlement With the Bank

Majdic asserts that the amount of his obligation to Jet Boats should have been reduced by the amount of the settlement between Jet Boats and Puget Sound National Bank. We decline to reach the merits of Majdic's contention because he did not properly raise the issue in the trial court.

At the conclusion of the trial, after the trial court had rendered its oral decision, Majdic's counsel made brief mention to the court that the payment of damages to Jet Boats along with Jet Boats' settlement with the bank would result in a double recovery for Jet Boats. The court noted that this was an unresolved problem, but did not address the issue at that point. During the trial no mention was made of the issue and Majdic presented no evidence on the subject.

Majdic next raised the issue in his motion for recon-

sideration made pursuant to CR 59(a)(5)–(9).[2] At that time, Majdic presented to the trial court an unsigned copy of what his counsel "believed" was the settlement agreement between Jet Boats and Puget Sound National Bank. The presentation of the agreement at that point in the proceedings does not support the motion for reconsideration. The trial court was obligated to decide the case on the evidence submitted to it. *Biehn v. Lyon,* 29 Wn.2d 750, 758, 189 P.2d 482 (1948). Likewise, on a motion for reconsideration based on CR 59(a)(5)–(9), the court must base its decision on the evidence it already heard at trial. The settlement agreement may have been admissible at trial, if it had been properly offered and the necessary foundation had been laid. However, here, as in *Biehn,* "[t]he record shows no offer, no foundation laid, no opportunity to object to its admission." *Biehn,* 29 Wn.2d at 758. If Majdic had wished simply to reopen the trial to submit evidence he should have submitted the settlement agreement together with a motion to reopen judgment pursuant to CR 59(g). He did not do so, and we consider it improper as a basis for a motion for reconsideration under the rule cited by Majdic.

### D
### Warranty of Merchantability

Majdic asserts that the trial court erred in failing to find that Jet Boats breached its implied warranty of merchantability on the boat. We reject this argument.

---

[2]CR 59(a) sets forth the grounds for reconsideration. Grounds (5) through (9) read as follows:

"(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;

"(6) Error in the assessment of the amount of recovery whether too large or too small, when the action is upon a contract, or for the injury or detention of property;

"(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;

"(8) Error in law occurring at the trial and objected to at the time by the party making the application;

"(9) That substantial justice has not been done."

In order for goods to be merchantable, they must pass without objection in the trade, be of fair average quality within the description, and be fit for the ordinary purposes for which such goods are used. RCW 62A.2–314. The trial court found that the boat was of fair average quality and that it would pass without objection in the trade. This finding is supported by the evidence.

Although the boat had numerous defects when Majdic took possession, testimony at trial indicated that regardless of the specific defects, the boat was generally of a quality to be considered merchantable. Further, the trial court allowed recovery for numerous latent defects under the theory of breach of warranty of fitness. The damages awarded for that breach generally cover Majdic's losses and an award of additional damages would constitute a double recovery.

## E
## Mitigation of Damages

Majdic asserts that the trial court erred in concluding that Majdic had a duty to mitigate and that he failed to mitigate his damages for part of the lost fishing season. Jet Boats argues on cross appeal that Majdic had a duty to mitigate his damages for the entire lost fishing season. We reject both arguments and hold that the trial court was correct in deducting from Majdic's recovery the amount that could have been mitigated during the second half of the fishing season.

The party alleging that the damages should have been mitigated, in this case Jet Boats, has the burden of proving the allegation. *Sutton v. Shufelberger,* 31 Wn. App. 579, 582, 643 P.2d 920 (1982). The general rule regarding mitigation of damages is that the victim of a breach of contract is required to use means that are reasonable to avoid or minimize his damages. *Ward v. Painters' Local 300,* 45 Wn.2d 533, 542, 276 P.2d 576 (1954). This duty to mitigate can be suspended, however, if there are grounds upon which the injured party could have reasonably expected

that the wrongdoer would perform. *Lopeman v. Gee,* 40 Wn.2d 586, 590, 245 P.2d 183, 32 A.L.R.2d 904 (1952). When a party receives repeated assurances that performance will be forthcoming, the injured party incurs no duty to mitigate his damages. *Sears, Roebuck & Co. v. Grant,* 49 Wn.2d 123, 126, 298 P.2d 497 (1956).

The trial court found that, by the end of June, Majdic reasonably should have known that the boat would not be completed in time for the Bristol Bay fishing season. This finding is supported by evidence that on June 30, the boat was taken on a trial run, at which time numerous problems were uncovered which would take several weeks to fix. At this point, Majdic incurred a duty to mitigate his damages because he could no longer reasonably expect Jet Boats to perform in time for the fishing season.

Upon incurring a duty to mitigate, Majdic was obliged to prevent his damages by reasonable efforts and expenditures. *Hoff v. Lester,* 25 Wn.2d 86, 94, 168 P.2d 409, 164 A.L.R. 751 (1946). The trial court found that at least one wooden boat was available for fishing at Bristol Bay during the fishing season. The court, therefore, reasonably concluded that Majdic should be allowed recovery only for one–half the fishing season since Jet Boats met its burden of proving that Majdic failed to make a reasonable effort to mitigate all of his damages.

### F
### Attorney's Fees

Majdic contends that he should have been allowed recovery of his attorney's fees at trial pursuant to RCW 4.28-.185(5). We find no merit in this assertion.

RCW 4.28.185(5) allows the trial court to award attorney's fees to a defendant when the defendant is brought into the state under this state's so–called long–arm statute. Although the trial court denied the attorney's fees sought under this section, it did not provide any reason for its decision. However, where a judgment or order is correct it will not be reversed because the trial court gave an

insufficient reason for its decision. *Keogan v. Holy Family Hosp.*, 95 Wn.2d 306, 317, 622 P.2d 1246 (1980). Therefore, if the appellate court is satisfied that, under the facts and applicable law, the issue was resolved correctly, we must affirm the trial court. *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 623, 465 P.2d 657 (1970).

■ The test to be applied when determining whether attorney's fees are properly awardable under RCW 4.28-.185(5) was set out in *State v. O'Connell,* 84 Wn.2d 602, 528 P.2d 988 (1974):

> Is the action frivolous and brought only to harass the defendant? If that question is answered in the negative, the test should then be: Has the defendant, in being forced to defend the action in this state, been subjected to burdens and inconveniences which would have been avoided had the trial been conducted at the place of his domicile, which are not balanced by conveniences to the defendant resulting from the trial of the action in this state, and which are of sufficient severity to warrant the court in concluding that, without the award of attorney fees, traditional notions of fair play and substantial justice would be violated?

*State v. O'Connell,* 84 Wn.2d at 606. An award of attorney's fees under RCW 4.28.185(5) is within the discretion of the trial court. *State v. O'Connell,* 83 Wn.2d 797, 844, 523 P.2d 872 (1974).

We hold that the trial court did not abuse its discretion in concluding that Majdic should not recover his attorney's fees. The present action is clearly not frivolous. Although the defendant probably did suffer some inconvenience as a result of having to defend the case in Washington instead of Alaska, the inconvenience does not appear to be sufficiently severe so as to warrant the award of attorney's fees. Majdic apparently did a great deal of business in this state as a result of his pile–driving occupation, and as a result, he was required to be here frequently as a matter of course. Most of the experts and witnesses were located in the Tacoma area and the boat was built and inspected in Tacoma, suggesting that Washington was in fact the most

convenient forum. Therefore, traditional notions of fair play and substantial justice were not offended by having Majdic appear in this state. Consequently, an award of attorney's fees is not required and the court did not err in failing to make the award.

## G
### Disregarding the Corporate Entity

Majdic argues that for any damage he has sustained because of Jet Boats' actions, he should be able to seek recovery from the Schiermans on the theory of disregard of the corporate entity. We reject this argument.

The party alleging an abuse of the corporate form has the burden of proving first, that the corporate form was intentionally used to evade a duty, and second, that disregard of the corporate form is necessary to prevent unjustified loss to the injured party. *See Meisel v. M & N Modern Hydraulic Press,* 97 Wn.2d 403, 410, 645 P.2d 689 (1982). Here, however, the trial judge made no findings of fact concerning the allegations of abuse of the corporate form. In the absence of a finding of fact on a disputed matter, we will imply a finding against the party having the burden of proof on that issue. *Rhodes v. Gould,* 19 Wn. App. 437, 441, 576 P.2d 914 (1978). Because Majdic had the burden of proof, and no findings were made on the issue, we imply a finding that Jet Boats did not abuse the corporate form.

## II
### Jet Boats' Cross Appeal
## A
### Waiver and Promissory Estoppel

Jet Boats contends that Majdic forfeited his right to recover damages resulting from Jet Boats' breach of contract because Majdic promised he would pay for the boat even after the boat was delivered late and with defects. Jet Boats bases this contention on the related doctrines of waiver and promissory estoppel.

A waiver is the intentional and voluntary relinquishment of a known right, or conduct that warrants an inference of

the relinquishment of such rights. *Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954). Waiver is a voluntary act which constitutes a choice by the party to give up something of value. *Bowman,* 44 Wn.2d at 669. The party's action must be inconsistent with anything other than the intention to waive his rights. *Bowman,* 44 Wn.2d at 667.

■ The trial court found that the discussions between Majdic and Schierman of Jet Boats indicated that Majdic was not waiving any of his rights to recover damages under the contract. Appellate review on this issue is limited to whether the finding is supported by substantial evidence. *Goodman v. Darden, Doman & Stafford Assocs.,* 100 Wn.2d 476, 483, 670 P.2d 648 (1983).

Here, Majdic repeatedly told Schierman that he was concerned about losing the fishing season. Schierman also received two letters from Majdic's attorney setting out Majdic's claims. This evidence is substantial and it supports the trial court's finding that Majdic did not waive his right to recover damages.

■ The doctrine of promissory estoppel may also work a discharge where its elements are present. Those elements include: (1) a promise, (2) which the promisor should reasonably expect to cause a promisee to change his position, and (3) which does cause the promisee to change his position, (4) justifiably relying upon the promise, in such a manner that (5) injustices can be avoided only by enforcement of the promise. *Gorge Lumber Co. v. Brazier Lumber Co.,* 6 Wn. App. 327, 336, 493 P.2d 782 (1972).

In the present case, the trial court found that DeWayne Schierman "knew no claims for damage were being waived by Julius Majdic's acceptance of the boat after the agreed delivery date." Although Majdic did indicate that he would pay for the boat, Schierman was not justified in relying on such a promise when he knew of Majdic's claim. In fact, Schierman even acknowledged that Majdic had grounds upon which to sue Jet Boats. Under these circumstances, Majdic clearly is not prevented by promissory estoppel from recovering his damages.

## B
## Crew's Share of Lost Profits

Jet Boats asserts that the trial court erred in allowing Majdic recovery for his crew's share of the lost profits. We agree.

Majdic cites the case of *Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 774, 440 P.2d 448 (1968), in support of the trial court's award of the crew's share of lost profits. In *Reefer Queen*, the court awarded such a share to the plaintiff, to be held in constructive trust for the crew. *Reefer Queen Co.*, 73 Wn.2d at 780. The court based the award on a rule derived from federal admiralty law principles adopted in the case of *Carbone v. Ursich*, 209 F.2d 178 (9th Cir. 1953). In *Carbone*, the court carved out the special rule allowing recovery of the crew's share based on the principle that "seamen are the favorites of admiralty and their economic interests entitled to the fullest possible legal protection." *Carbone*, 209 F.2d at 182.

The *Reefer Queen* case is distinguishable from this case on its facts and it fails to support the recovery of the crew's profits. In *Reefer Queen*, the court specifically stated that the *Carbone* rule should be applied "under the facts and circumstances of the present case". *Reefer Queen Co.*, 73 Wn.2d at 779. The *Reefer Queen* facts included: Crew closely allied with vessel, extensive preparations made prior to the trip, crew spent several weeks getting acquainted with the vessel, crew was obliged to stay with the vessel at all times during the voyage. In this case, although the trial court found that Majdic's crew was "closely allied with the skipper" it did not find the other *Reefer Queen* circumstances and the record would not support such a finding. The crew in *Reefer Queen* was far more permanently attached to the vessel than was the crew in this case and we, thus, do not believe that *Reefer Queen* is authority for an award of lost profits to Majdic's crew.

Accordingly, we reverse on the issues of Jet Boats' interest recovery and Majdic's recovery for his crew's share of

lost profits. We affirm on the remaining issues.

WORSWICK, C.J., and PETRICH, J., concur.

Review denied by Supreme Court September 2, 1986.