H. J. KEITH COMPANY, a corporation existing under the laws of the State of Massachusetts, *vs.* BOOTH FISHERIES COMPANY, a corporation existing under the laws of the State of Delaware.

1. WAREHOUSEMEN—STORAGE CHARGES—RIGHT WHERE GOODS HAVE BEEN INJURED.

In an action against a cold storage company for damage to eggs stored with it, the defendant is entitled to credit for its storage charges up to the time of the tort or default causing damage, but not afterward.

2. BAILMENT—ACTIONS AGAINST BAILEE—NATURE.

Even where a bailment has been created by special contract, the bailor may recover against the bailee for his negligence in an action of tort, notwithstanding the fact that the contract of bailment must be proved in order to establish the relationship.

3. WAREHOUSEMEN—LOSS OR INJURY TO GOODS—STATUTORY PROVISIONS.

The statute of Illinois approved May 29, 1907 (*Laws* 1907, *p.* 481), which provides that a warehouseman shall be liable for any loss or injury to the goods intrusted to him, caused by his failure to exercise such care in regard to them as a reasonably careful owner of the same goods would exercise, but not for any injury which could not have been avoided by such care, is merely declaratory of the common law.

4. NEGLIGENCE—ACTS CONSTITUTING NEGLIGENCE—DEGREE OF CARE REQUIRED.

Negligence is the want of due care, or the failure to exercise that degree of care which an ordinarily prudent man would have exercised under like circumstances.

5. BAILMENT—ACTIONS AGAINST BAILEE—BURDEN OF PROOF.

While the burden of proof of negligence is ordinarily upon the plaintiff, where the property is damaged or injured while in the exclusive custody of a bailee, it is incumbent upon him to satisfy the jury that the injury was not due to his negligence.

6. DAMAGES—INTEREST.

The owner of property which has been damaged through the negligence of a warehouseman may recover interest upon the amount of his loss from the date of the warehouseman's tort or default.

(*June* 3, 1913.)

PENNEWILL, C. J., and WOOLLEY and RICE, J. J., sitting.

*William S. Hilles* and *Francis E. Neagle* (of the New York bar) for the plaintiff.

*J. Harvey Whiteman, Clifford Mannering* and *J. Sidney Condit* (of the Chicago bar) for the defendant.

SUMMONS CASE (No. 127, September Term, 1912) to recover

damages alleged to have been sustained by the plaintiff on acount of the negligence of the defendant in failing to keep in good and proper condition in the defendant's cold storage warehouse a large quantity of frozen egg product, the property of the plaintiff.

See on demurrer to declaration, *ante*, also 86 *Atl.* 166.

## PLAINTIFF'S PRAYERS.

"If a person receives property as a bailee and such property is damaged or injured while in his possession and while in the exercise of ordinary and reasonable care, he is not liable for such damage or injury; but if it be occasioned by the negligent conduct or carelessness of the bailee, his servant or agent, he is liable for such damage or injury.

"Ordinarily negligence is never to be presumed but must be proved like any other substantive fact and the burden of proof is upon the plaintiff. But where the property is damaged or injured whilst in the exclusive custody of a bailee, his servant or agent, it is incumbent upon the bailee to satisfy the jury that the injury was not occasioned by the negligence of himself or his servants or agents." Per Boyce, J., in *Pusey v. Webb*, 2 *Penn.* 490, 47 *Atl.* 701. See, also, *Weber v. Vernon*, 2 *Penn.* 359, 45 *Atl.* 537; *Bowen v. Insenberg*, 6 *Penn.* 230, 67 *Atl.* 152.

If you find that the defendant through its negligent conduct or carelessness damaged the frozen eggs of the plaintiff, the measure of damages which the plaintiff can recover is the difference between the market value of the eggs at the time when the bailment was ended, which was in October, 1910, and the market value of eggs in their damaged condition at that time, with interest. *Vaughan et al. v. Webster*, 5 *Harr.* 256.

"The measure of damages is the value of the property at the time of its conversion, with interest." *Holt v. Jordan Co.*, 25 *Ind. App.* 314, 57 *N. E.* 575; *Gutschneider v. Pirosnick* (*Sup.*) 123 *N. Y. Sup.* 190; *Chaityn v. Stock* (*Sup.*) 120 *N. Y. Sup.* 89; *Hyde v. Mec. Ref. Co.*, 144 *Mass.* 432, 11 *N. E.* 673; *Motley v. Warehouse Co.*, 122 *N. C.* 347, 30 *S. E.* 3; *Dale v. See*, 51 *N. J. Law*, 378, 18 *Atl.* 306, 5 *L. R. A.* 583, 14 *Am. St. Rep.* 688.

"   *   *   *   The general rule, supported by the great weight

of authority is that in cases of torts to property, interest on the damages may be allowed, as a part of the damages and as approximately uniform measure of compensation." 22 *Cyc.* 1501.

"Where, however, although a demand is unliquidated, the amount thereof can be readily ascertained by mere computation, interest thereon will be allowed." 22 *Cyc.* 1513.

"Even though a demand be not specifically pecuniary, so as to be accurately ascertainable by mere computation, yet if, by reference to established market values, the amount due may be approximately ascertained, interest will be allowed as upon a liquidated demand." 22 *Cyc.* 1514.

"It is well settled that the measure of the damages for the loss of the goods by the carrier, when he is liable for such loss, is generally the value of the goods at the destination at which he agreed to carry them, with interest on such value from the time when the goods should have been delivered.  *  *  *  " *Hutchinson on Carriers* (3d Ed.) *p.* 1610.

If you find that the defendant by its negligent conduct or its carelessness damaged the frozen eggs of the plaintiff, it cannot collect any storage charges for keeping the eggs and the amount allowed to the plaintiff for its damages is not to be diminished by any sum the defendant claims for storage. *Sedgwick on Damages* (8th Ed.) § 317, *p.* 463.

"But if the bailee is at fault he can recover nothing for his work or services and is liable to an action for damages." *Browne on Bailments, p.* 59.

"Where perishable goods are rendered worthless by the failure of a storage company to keep the proper temperature, it is not entitled to storage." *Van Zile on Bailments,* § 143; *Story on Bailments,* § 420; *Williston's Wald's Pollock on Contracts, note p.* 324; 30 *Am. & Eng. Ency.* (3d Ed.) 62.

"The testimony on behalf of the defendant, however, we think, clearly warranted the justice in finding as he did, that the fruit was to be taken and stored at a temperature ranging from thirty-five to forty, and by failing to do this, but placing it at a temperature which caused the fruit to freeze and thus ruining it, the appellant failed to perform its contract and consequently

failed to earn any storage whatever." *Greenwich Warehouse Co. v. Maxfield*, 8 *Misc. Rep.* 308, 28 *N. Y. Supp.* 732.

The defendant in any event was not entitled to collect storage charges after the alleged damage occurred, and after they were notified that the plaintiff would claim damages and as they have not separated their storage charges before and after that date, you cannot allow them anything for storage.

## DEFENDANT'S PRAYERS.

1. That as plaintiff has filed its declaration in case, alleging a breach of defendant's duty toward plaintiff, and plaintiff's proofs tend to prove a breach of a special contract, the verdict must be for the defendant.

2. That as plaintiff has sued defendant in tort and has proved a case in contract, the verdict must be for the defendant.

3. That in order for the plaintiff to recover in an action for the failure of the defendant to perform its duty arising out of an express contract, it is necessary to allege the terms of the contract, and the plaintiff having failed to make such allegations, and having offered evidence tending to prove the breach of a special contract, the verdict must be for the defendant.

But if the court should decline to instruct the jury according to the foregoing prayers, then the defendant prays the court to charge the jury as follows:

(a) That if they believe the eggs shipped by the plaintiff, or its agent, to the defendant, to be stored and cared for by the said defendant in its cold storage plant, were impure, imperfect and had deteriorated before they were received by the defendant, then their verdict should be for the defendant.

(b) That in the investigation of the facts in this case they must consider the condition of the eggs when they were accepted by the defendant, for, if they were not in good condition, and properly put up for a long term storage when delivered to the defendant, said defendant is not responsible for any loss which resulted from depreciation in value in consequence of the imperfect character of the eggs or for want of their proper preparation for storage. *Reed and Walker v. P., W. & B. R. R. Co.*, 3 *Houst.* 176, 213.

(c)   That at the time plaintiff stored the eggs, in controversy in this case, with defendant, and during all the time such eggs remained in storage with defendant until their final disposition, there was in effect in Illinois a law (*Laws* 1907, *p.* 481) which provided as follows:

"A warehouse man shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise; but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

You are, therefore, instructed that if you believe from all the evidence in this case that defendant exercised in the storage and handling of the goods in controversy, such care in regard to them as a reasonably careful owner of similar goods would have exercised, then there is no liability in this case on the part of the defendant to plaintiff, and your verdict should be for the defendant.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The present action was brought by the plaintiff, the H. J. Keith Company, against the defendant, the Booth Fisheries Company, for damages alleged to have been sustained by the plaintiff on account of the negligence of the defendant in failing to keep in good and proper condition a large quantity of frozen egg product, the property of the plaintiff, in the defendant's cold storage warehouse in Chicago in the years 1909 and 1910.

The plaintiff's claim for damages is two thousand, three hundred and eighty-seven dollars and ninety-nine cents. with interest thereon from October 1, 1910.  The said claim is based upon the loss of thirteen thousand, nine hundred and thirty pounds of whites at twenty cents per pound, and four thousand, three hundred and fifty pounds of yolks at nineteen cents per pound, aggregating the sum of three thousand six hundred and twelve dollars and twenty cents, from which is deducted one thousand two hundred and twenty-four dollars and twenty-one cents, the amount re-

ceived from the defendant for the six hundred and thirteen cans
left in its warehouse and sold by the defendant with the plaintiff's
consent.

The declaration filed in the case consists of three counts, the
first of which avers, that the plaintiff between August 25, 1909,
and August 30, 1910, delivered to the defendant certain cans of
frozen eggs, whites and yolks, the property of the plaintiff, to be
stored in the defendant's warehouse for a certain reward until
called for by the plaintiff, which the defendant knew required to be
kept frozen in its warehouse, and the defendant received the said
goods for that purpose; that it was the duty of the defendant to
take due and reasonable care and precaution in the custody and
handling of the said goods, yet the defendant not regarding its
duty, negligently and carelessly failed and neglected to take due
and proper care of the goods, because of which the said goods
were greatly injured and damaged, and a large part thereof became
and were rendered useless to the plaintiff.

The second count avers that the plaintiff between August 25,
1909, and August 30, 1910, at the special instance and request of
the defendant, caused to be delivered to the defendant certain
cans of frozen eggs, whites and yolks, of the plaintiff, to be by the
defendant stored in his warehouse at a proper and suitable tem-
perature for the keeping thereof for a reasonable reward to the
defendant, and that the defendant received the said goods for the
purpose aforesaid; but that the defendant not regarding its duty
in that behalf, by itself and its servants conducted itself so care-
lessly, negligently, and improperly in and about the storing and
keeping of said goods in the warehouse that by and through the
mere negligence and improper conduct of the defendant and its
servants the said goods became and were damaged and destroyed
to the loss of the plaintiff.

The third count avers that between August 1, 1909, and
September 30, 1909, the plaintiff, at the special instance and re-
quest of the defendant, caused to be delivered to the defendant
certain cans of frozen eggs, whites and yolks, the said goods being
then in good condition and frozen, that the defendant might
safely and properly store and keep the said goods for the plaintiff

for reasonable reward to the defendant, and that the defendant received the goods for the purpose aforesaid; but the defendant not regarding its duty, by itself and its servants, conducted itself so carelessly, negligently and improperly in and about the care and keeping of the said goods that by and through the mere neglect and improper conduct of the defendant and its servants the said goods became injured and damaged to the loss of the plaintiff.

We will endeavor to state the contentions of the plaintiff in plainer language, and in such a way as may perhaps be more intelligible and helpful to you.

The plaintiff claims that the canned eggs in question were delivered to and received by the defendant for the purpose of being stored and kept in a frozen condition for the plaintiff until such time or times as the plaintiff should call for them; that thereupon there existed between the plaintiff and the defendant the relation of bailor and bailee, by reason of which it became and was the duty of the defendant not only to keep the goods safely stored but also at such a state of temperature as would insure their being at all times in a proper condition, to wit, in such a frozen condition that would be produced at a temperature not higher than fifteen degrees above zero Fahrenheit; that the defendant neglected to keep the eggs in such a frozen condition, and by reason of its negligence the eggs were greatly damaged, and a large part thereof became useless to the plaintiff, and to recover damages for the injury sustained by the plaintiff on account of such alleged negligence this suit was brought.

It is not denied by the defendant that the canned eggs in question were received by it for the purpose of being stored and kept in a proper condition until called for by the plaintiff; neither is it denied that upon the receipt of said eggs the relation of bailor and bailee arose between the parties, and continued so long as the eggs remained in the defendant's custody and control. It is not denied by the defendant that because of such relation it became and was its duty to keep the eggs delivered to it safely, and at such a temperature as would preserve them in good condition, provided it could be done by the exercise of such care as a

reasonably careful and prudent man would exercise under like circumstances.

But the defendant contends that it was not guilty of any negligence or want of care that caused damage or injury to the eggs of the plaintiff stored in its warehouse, and that, therefore, there can be no recovery in this case.

More especially does the defendant contend: *First.* That the eggs in question were not in a damaged condition at any time while in its warehouse, but on the contrary had been properly kept, and were at all times, while in its custody and control, in good condition. *Second.* That if the eggs were in a damaged condition when called for or inspected by the plaintiff, its agents, vendees or consignees, it was because they were in bad condition when received by the defendant, or because of something that happened after they were removed from the defendant's custody and control.

The defendant further contends that if the jury should think the plaintiff is entitled to recover, the defendant should be allowed the storage costs and expenses incurred in the keeping of the eggs in question amounting, for the entire time, to four hundred and thirty-three dollars and eighty-eight cents, or at least the part of such costs and expenses incurred up to the time of the tort or default, amounting to two hundred and one dollars and ninety-four cents, if you should believe there was default on the defendant's part.

We give you the following instruction upon this point:

[1] If you find that the defendant by its negligence damaged the eggs of the plaintiff, the plaintiff would be entitled to recover, but the defendant would be entitled to be allowed reasonable expenses for storage up to the time of the tort or default, and the amount allowed the plaintiff should be diminished to that extent. But the defendant would not be entitled to any storage expenses incurred after the tort or default.

Under the constitution of this state the court are not permitted to charge the jury with respect to matters of fact. We can only state the questions of fact in issue and declare the law. The testimony in this case is unusually voluminous, and consists

largely of depositions which have been read in your hearing. You must rely upon your own recollection of the testimony produced, and we have no doubt you will recall it as clearly and accurately as possible, considering its volume and nature, because you have been very attentive and patient during the trial which has consumed several days.

The court, for the reason stated, can give you no material assistance respecting the facts in issue—they are entirely for your determination.

The following facts are, however, undisputed, viz.: That the Seymour Packing Company was engaged in the business of packing eggs during the years 1909 and 1910 in Topeka, Kansas; that the eggs packed by this company were secured from farmers and merchants; that they were graded, candled, broken out and canned; that the canned eggs in question, represented by lot numbers 31967, 42,117, 42,633, 43,211, 43,596, 44,840, 44,841 (car receipt), 44,843, 45,406 and 47,450, and for all of which warehouse receipts had been given by the defendant, had been packed for the plaintiff by the Seymour Packing Company and shipped to the defendant at Chicago to be safely and properly kept till called for by the plaintiff; that a part of said eggs had been removed from defendant's warehouse upon the plaintiff's order prior to October, 1910, but that there were in the defendant's warehouse in October, 1910, certain eggs covering a number in accordance with the lot numbers of the warehouse receipts in evidence, which amounted to ten thousand five hundred and ninety pounds of whites, two thousand three hundred and forty pounds of yolks, and four thousand three hundred and eighty pounds of mixed eggs.

It is claimed by the plaintiff that all of the eggs shipped and delivered to the defendant for the plaintiff, as above stated, were frozen, shipped in iced cars, suitable for food purposes and in good condition when received by the defendant. It is also claimed by the plaintiff that the eggs in controversy were Keith's No. 1 egg product, and that such product stood in a class by itself, had a high reputation and commanded a price of its own in the market. This the defendant does not admit but in fact denies.

Charge.

[2]  The court has been requested by the defendant to direct you to return a verdict in its favor because the plaintiff has sued in tort and proved a special contract between the parties respecting the goods which are the subject of the action.

We decline to grant the request.  The authorities cited to support the defendant's contention are not, in our opinion, applicable to this case.  Without reviewing such cases, or commenting specifically upon them, we may say that the real point adjudicated in most of them was this: If the plaintiff declares in one form of action, and his proof establishes an entirely different cause of action, he cannot recover.  Our attention has not been called to any case which holds that a plaintiff may not recover in an action of tort even though the relation of bailor and bailee, upon which the action is based, was created by contract express or implied.  Such relation is usually created, in warehouse storage cases at least, by contract, and the action in case of breach is almost always in tort.  We think that testimony may be admitted to show that the relation of bailor and bailee was created by contract, and an action *ex delicto* sustained notwithstanding such fact.  Indeed, in very many cases the relation could not be shown except by introducing evidence of the agreement.  When the relation of bailor and bailee is once shown by contract or otherwise, the usual and appropriate remedy is tort, although the plaintiff may at his election sue in tort or for breach of the contract.  There is ample authority to sustain such conclusion.

*Van Zile on Bailments and Carriers* in speaking of bailment says:

"Generally, it may be defined to be the delivering of the possession of a thing in trust for a particular object or purpose expressed or understood, and upon a contract express or implied to conform to that object or purpose."

In *Volume* 5 of *Cyc. page* 213, it is said: "The bailor may sue in case where the subject matter of the bailment has been misused by the bailee, or where a loss or injury to the property has occurred from the latter's neglect."

In *Volume* 6 of the same work, at *page* 688, the following language is used: "For a breach of an ordinary contract which

involves no element of tort, an action of assumpsit is the proper remedy, and an action on the case will not lie; but when a duty is imposed by the contract, or grows out of it by legal implication, and injury results from the violation or disregard of that duty, an action on the case will lie, although assumpsit may also be maintained."

And in a note it is said: "The contract is laid as mere inducement, and the tort arising from the breach of duty is the gravamen of the action."

*Redfield* in his work on *Carriers and other Bailees*, at *page* 560, states the law as follows:

"As against the bailee for any default of duty in not keeping the thing bailed, or not safely returning it to the bailor, he may bring assumpsit, or he may have an action on the case, sounding in tort, and counting upon the breach of duty resulting from the relation."

But the question raised by the defendant's request, and which we have been considering, is not an entirely new one in this state. In the case of *Klair v. P., B. & W. R. R. Co.*, 2 Boyce, 276, 78 *Atl.* 1086, one of the defendant's prayers for a verdict in its favor was as follows:

"*Second*, for the reason that a variance is shown by the proof of the special contracts between the plaintiffs and the defendant company, it appearing that this action should have been on the contracts and not in tort."                -

The court said: "This action is based upon the alleged negligence of the defendant. During the trial we have permitted the defendant under the general issue to show that the plaintiffs, through their agents, entered into a special contract with respect to these shipments. Counsel for defendant now contend that because of the existence of such a contract plaintiffs are precluded from recovering except in an action upon said contract, and that therefore there is a variance which entitles the defendant to a judgment.   *   *   *

"The right of action exists at common law independent of contract, and even though an action might be brought upon the contract, the existence of the contract does not destroy the right to bring an action in tort."

The court held in that case, as we do in this, that the plaintiff might, at his election, have sued in tort or upon the contract. And such, we think is the law not only of this state but of all states in which the rules of common law pleading prevail.

[3]   The remaining questions of law upon which it is necessary for the court to instruct you are very few.   It is stipulated and agreed by and between the parties that there is a statute of the State of Illinois, entitled "An act in regard to warehouse receipts," approved May 29, 1907, and in force since the date of its approval, which provides as follows:

"A warehouseman shall be liable for any loss or injury to the goods [intrusted to him] caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

This statute, if it applies to the present case, is merely declaratory of the common law, and simply expresses, as we understand it, and as the parties agree, the common law, which is the law of this state, viz., that the care which the defendant was required to exercise in the keeping of the eggs in question, was such care as an ordinarily prudent man would have exercised under similar circumstances.   We think it is the law, that in cases of the character of the one now before the court, the care required on the part of the defendant is such care as a reasonably careful owner of similar goods would exercise.   *Weber v. Vernon*, 2 *Penn.* 361, 45 *Atl.* 537; *Vaughan v. Webster*, 5 *Harr.* 257; *Ballston Ref. Storage Co. v Eastern States Ref. Co.*, 142 *App. Div.* 135, 139, 126 *N. Y. Supp.* 857.   We think such care would be reasonable and due care under the circumstances.

The important and crucial question for your determination, therefore, is whether the defendant did or did not exercise such care in regard to the eggs as a reasonably careful owner of similar goods would have exercised.   The defendant would not be liable for any loss or injury to the eggs which could not have been avoided by the exercise of such care.

As we have already observed, the relation of bailor and bailee

existed between the plaintiff and defendant while the eggs were in the custody and control of the defendant, and because of that relation it was the duty of the defendant to exercise due and reasonable care and circumspection in storing and keeping them.

The degree of care required to be exercised was such as was reasonably necessary to keep the eggs in good condition in a cold storage warehouse. If a temperature not higher than fifteen degrees above zero Fahrenheit, and called and known in the business as "sharp freezer", was necessary to keep the eggs in proper condition, and such a temperature could have been maintained in the exercise of reasonable care by a party engaged in the cold storage business and keeping a cold storage warehouse wherein frozen canned eggs were stored and kept, then it was the duty of the defendant to maintain such a temperature. If the eggs in question were ruined or damaged because of the defendant's failure to maintain a temperature sufficiently low to keep them in good condition, and such a temperature could have been maintained by the exercise of reasonable care, then the defendant is liable to the plaintiff in this action on account of such negligence or want of due care, and your verdict should be in favor of the plaintiff.

But, if you believe that the eggs in controversy were kept in good condition while in the custody and control of the defendant, and were not in a damaged condition when delivered to or called for by the plaintiff; or, if you believe the goods were in a damaged condition when called for or inspected by the plaintiff or his agents, but that such condition was owing to the fact that the eggs were in bad condition when received by the defendant and was not caused by the failure of the defendant to exercise proper and reasonable care in their keeping; or if you believe the eggs were damaged after they were removed from the custody and control of the defendant, the defendant is not liable, and your verdict should be in its favor.

[4, 5] In order that the plaintiff may recover you must be satisfied by the weight or preponderance of the evidence, not only that the eggs were damaged, but also that the damage was caused by the negligence of the defendant, that is, by the failure of the

Charge.

defendant to exercise due and reasonable care in the storing and keeping of them. If the loss or damage happened from any other cause the plaintiff cannot recover. Negligence in law is the want of due care, or the failure to exercise that degree of care with respect to the subject matter in controversy, which an ordinarily prudent man would have exercised under like circumstances. Ordinarily negligence is never presumed, but must be proved like any other substantive fact, and the burden of proof is upon the plaintiff. But where the property is damaged or injured while in the exclusive custody of a bailee, his servant, or agent, it is incumbent upon the bailee to satisfy the jury that the injury was not occasioned by the negligence of himself or his servant or agent. *Pusey v. Webb,* 2 *Penn.* 490, 494, 47 *Atl.* 701; *Ballston, etc., Co. v. Eastern States, etc., Co., supra.*

[6] If you find for the plaintiff your verdict should be for such a sum of money as you believe from the testimony would be sufficient to reasonably compensate the plaintiff for the loss or damage he sustained on account of the defendant's negligence in the storage and keeping of the eggs in question, together with lawful interest thereon from the time of defendant's tort or default, less any sum you may believe, under the instruction of the court the defendant is entitled to for storage expenses, including interest thereon. The measure of damages in a case of this character is the difference between the value of the goods in their damaged state and what would have been their value if kept and delivered in good condition; that is, the difference between the value of the damaged goods and the market value, at the time of the tort, of goods of the same character in proper condition, with interest.

*Sutherland* in his work on *Damages* (*Volume* 1, § 105), states the law upon this subject as follows:

"The value of the property is ascertained and adopted as the measure of compensation for being deprived of the property the same in actions of tort as in those upon contract. In both cases the value is the legal and fixed measure of damages, and there is no discretion with the jury. * * * And, moreover, the value is fixed in each instance on similar considerations at the time

when, by the defendant's default, the loss culminated. And a party who is entitled to recover and must accept its value in place of the property itself should always be allowed interest on that value from the date at which the property was lost or destroyed or converted. Whether he recovers the value for the failure of a vendor or bailee to deliver, or by reason of the destruction, asportation or on conversion of the property by a wrongdoer, interest is as necessary to a complete indemnity as the value itself. The injured party ought to be put in the same condition, so far as money can do it, in which he would have been if the contract had been fulfilled or the tort had not been committed; or the loss had been instantly repaired when compensation was due."

In a case in this state, of trover and conversion, *Vaughan et al. v. Webster*, 5 *Harr.* 256, the court said: "The measure of damages is the value of the property at the time of its conversion, with interest."

Verdict for plaintiff.