[No. 31859.  Department One.  March 20, 1952.]

In the Matter of the Estate of LOUISA G. BOUNDY, Deceased.
TRENTON M. HUFF et al., Appellants, v. GEORGE H. BOUNDY,
Individually and as Executor, Respondent.[1]

Claude K. Irwin and J. D. McMannis, for appellants.

S. Dean Arnold (V. R. Clements, of counsel), for respondent.

DONWORTH, J.—This is an appeal from a judgment and decree of distribution wherein the trial court approved the executor's final account and dismissed appellants' petition for establishment of an alleged contract by respondent to devise certain property to appellants and for specific performance of such contract.  The decree also directed that distribution of the residue of the estate of Louisa G. Boundy be made to respondent as his separate property in accordance with her will, free and clear of any restrictions and with unrestricted right to make such testamentary disposition thereof as he might elect.

The circumstances giving rise to this controversy are as follows:

[1]Reported in 242 P. (2d) 165.

On May 22, 1946, and for some years prior thereto, respondent George H. Boundy and Louisa G. Boundy were husband and wife residing in Whitman county. All of their property was community property. There was no issue of their marriage. On that date, each executed his will in the presence of the other and in the presence of three subscribing witnesses. By his will, respondent devised the residue of his estate, after payment of debts, taxes, and costs of administration, to his wife for her use and benefit during her lifetime and, at her death, to certain of his collateral relatives.

The will of Louisa G. Boundy provided that the residue of her estate, after payment of debts, taxes and costs of administration, should pass to respondent if he survived her long enough to admit her will to probate and actually did have her will so admitted; otherwise her estate should pass to certain of her collateral relatives, among whom are appellants.

After the execution of the two wills, they were taken by the lawyer who prepared them to his office and placed in his safe.

When the wills were executed, Louisa G. Boundy was about eighty years of age and respondent was seventy-three. At all times material to this controversy and until her death, Mrs. Boundy was a bedridden invalid.

In September, 1947, respondent suffered a stroke, and for some time thereafter both he and his wife were patients in the same room of a hospital in Colfax.

While both were in the hospital, respondent requested the attorney who had drawn the two wills of May 22, 1946, to prepare a codicil to his will in accordance with certain instructions he then gave to the attorney. This codicil, which was executed by respondent December 13, 1947, contained the following paragraph:

"Should my wife predecease me and by the terms of her last will and testament any part of her share of our community estate should pass to me then in that event I give, devise and bequeath the same in the amount and share and to the same persons mentioned in her will that would have received her estate in case I had predeceased my wife. This new clause is added in this codicil to paragraph six because

both myself and wife are confined in a hospital and it is uncertain as to which of us might survive and in no event do I want her share of our community property to go to my relatives and beneficiaries instead of going to the persons named in her last will made at the same time and before the same witnesses as my will was made on May 22, 1946."

This codicil was retained by the attorney and placed in his office safe with the two wills.

Mrs. Boundy died June 6, 1948, and her will of May 22, 1946, was admitted to probate March 24, 1949. Letters testamentary were issued to respondent, who was named in the will as executor to serve without the intervention of the court. Respondent acted in this capacity, and the estate was administered in the usual manner. When respondent's final account and petition for distribution was about to be heard by the court, appellants filed their objections thereto.

In these objections, it was alleged that, just prior to the execution of their wills on May 22, 1946, Mrs. Boundy requested the lawyer to redraw her will to make certain that appellants would obtain her half of the community property. Thereupon respondent proposed that, if she would sign her will as drawn, he would agree to will to appellants her share of the community property, should he inherit it. Mrs. Boundy accepted this offer, and each party then executed his will. By mandatory mutual request of both testators, the wills were delivered to the attorney to hold until the death of the survivor. In December, 1947, Mrs. Boundy became uneasy about respondent's carrying out his agreement and again requested the lawyer to redraw her will in the respect above mentioned. At that time, respondent stated to Mrs. Boundy that if she would refrain from so doing he would make an irrevocable codicil to his will. Accordingly, respondent did execute his codicil which included the paragraph hereinbefore quoted. This was done in consideration of Mrs. Boundy's refraining from making a new will and in confirmation of their agreement of May 22, 1946. The codicil was delivered by respondent to the attorney with instructions to hold it until the death of the survivor.

A trial was then had on the issue thus presented, which consisted of a question of fact, to wit: Did Mr. and Mrs. Boundy, at the time of making their wills, orally agree that, if he should acquire ownership of her half of the community property by virtue of her will, he would make testamentary disposition thereof to her relatives who were named in paragraph six of her will?

Appellants have made the following assignments of error:

"(1) The Court erred in deciding the case upon the most rigorous rule of evidence applied in oral contracts to will, or make mutual wills, although the promisor was living; a confirmatory codicil was made by the promisor; and the court found an agreement was made.

"(2) The Court erred in holding that the evidence was not sufficient to establish the oral contract to will, although a codicil was executed and the Court found that the testimony of the agreement was positive and corroborated.

"(3) The Court erred in holding as a matter of law that the testimony of an offer and assent thereto did not constitute a 'meeting of the minds'. under the law of contracts.

"(4) The Court erred in holding that the promisor should not be held to the consequences of his acts of assenting and executing a codicil because he was weak, emotional, shaking and crying."

None of these assignments point to any error of the trial court in making its findings of fact. Rule on Appeal 43 (34A Wn. (2d) 47), provides:

"No alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the 'assignments of error' in appellant's brief. In appeals from all actions at law or in equity tried to the court without a jury, appellant must point out by number and description the finding of fact upon which he predicates error, otherwise the findings will be accepted as the established facts in the case. . . ."

Under this rule, there is no distinction between appeals in law cases and equity cases, since Rule of the Superior Courts 17 (34A Wn. (2d) 118) requires that findings of fact be made in all cases tried by the court without a jury.

The case of *Bergstrom v. Olson*, 39 Wn. (2d) 536, 236 P. (2d) 1052, cited by appellants in their reply brief, was

tried and an appeal perfected prior to January 2, 1951, when the court rules above referred to became effective. Rule on Appeal 1 (34A Wn. (2d) 15) preserved the rights of litigants under the statutes and rules which were abrogated by the new rules. Rule on Appeal 43 makes what we said in the *Bergstrom* case inapplicable here.

Since the findings made by the trial court are not challenged in the assignments of error, they will be accepted as the established facts in this case. *Erickson v. Kongsli, ante* p. 79, 240 P. (2d) 1209.

We, therefore, turn to a consideration of findings VIII, IX and XI, which, in so far as they relate to the issue of fact heretofore noted, read as follows:

VIII. " . . . . . . .

"That the only understanding and agreement had between George H. Boundy and the decedent, Louisa G. Boundy, in regard to their wills, or the distribution of their estates, was immediately prior to May 22, 1946, the date of the execution of their wills, at which time it was understood that, if George H. Boundy pre-deceased his wife, Louisa G. Boundy, he would, by his will, devise and bequeath his entire estate to her for her lifetime and provide therein for Trenton M. Huff to care for her (she being bedridden at the time), whereas, on the other hand, George H. Boundy would receive all of the property and estate of Louisa G. Boundy, if she pre-deceased him, but if not, then her property and estate should descend to Genella Grace Wayne (formerly Chambers), Josie Van Duyn, Trenton M. Huff and Roxie Lee Huff, as an alternate; that such provisions were embodied in the will of George H. Boundy, dated May 22, 1946, (Objectors' Exhibit B) and the Last Will and Testament of Louisa G. Boundy, dated May 22, 1946, (Objectors' Exhibit A) both of which remained unchanged until the death of Louisa G. Boundy.

" . . . . . . . .

"That at no time or place during the lifetime of the decedent, Louisa G. Boundy, did she and her husband, George H. Boundy enter into any agreement wherein and whereby either of their said wills, dated May 22, 1946, and admitted in evidence respectively as Objectors' Exhibits A and B, were to be irrevocable, or that if the decedent, Louisa G. Boundy, refrained from executing any new or different will than as made and published as Objectors' Exhibit A, that

the said George H. Boundy would by will, codicil or any other type of instrument or method devise and bequeath any part of his estate to Trenton M. Huff, Josie Van Duyn, Genella Grace Wayne (formerly Chambers) or Roxie Lee Huff.

IX. ". . . . . . . .

"That said purported codicil was not requested, prepared nor subscribed to by George H. Boundy in compliance with, or as a part of, any agreement between George H. Boundy and Louisa G. Boundy.

"That on or about the 11th day of September, 1947, the said George H. Boundy suffered a stroke, which paralyzed the entire left side of his body, of which he had no use or control and was unable to read; that George H. Boundy did not read the aforesaid codicil (Objectors' Exhibit C) before subscribing to the same, because he was unable to do so; that at the time said codicil was read to him he was weak, emotional, shaking and crying; that prior to his subscribing thereto, he did not understand the same as read to him or the legal effect thereof; that no agreement was made on the date of the execution of the aforesaid codicil, or at any other time at all, restricting the ambulatory character of said purported codicil, and that no agreement was made at that time, or at any other time, obligating the said George H. Boundy to devise any property whatsoever to Trenton M. Huff, Genella Grace Wayne (formerly Chambers), Josie Van Duyn or Roxie Lee Huff."

XI. "That following the execution of the wills of George H. Boundy and Louisa G. Boundy, each dated May 22, 1946, (Objectors' Exhibits B and A), they were placed in the custody of attorney, Frank Sanger, only for such time as to enable George H. Boundy to receive the return of them when he was able to do so; that the continued custody of said wills together with the codicil of George H. Boundy, dated December 13, 1947, (Objectors' Exhibit C), by the said Frank Sanger was not pursuant to any agreement, nor did it constitute a partial performance of any agreement theretofore had between George H. Boundy and Louisa G. Boundy that the said wills and codicil should remain irrevocable, or that either should be withheld from probate until the death of the survivor."

With these findings in mind as the established facts of the case, we now consider appellants' four assignments of error.

First, appellants complain that the trial court erroneously applied the most rigorous rule of evidence, to wit, that an oral contract to devise must be proven by evidence that is "conclusive, definite, certain and beyond all legitimate controversy." Appellants argue that the evidence need only be "clear, cogent and convincing," citing *Payn v. Hoge,* 21 Wn. (2d) 32, 149 P. (2d) 939, which is discussed in *Jennings v. D'Hooghe,* 25 Wn. (2d) 702, 172 P. (2d) 189.

■ Assuming that the trial court in making its findings applied the more stringent rule, nevertheless, this court must accept the findings as made. We cannot review the evidence upon which they were based, since no error is pointed out in respect to them, as required in Rule 43, *supra.*

The three remaining assignments of error appear to relate to factual matters which cannot be determined without reviewing the evidence. Rule 43, *supra,* precludes us from doing this.

The findings of the trial court support the judgment and decree of distribution entered herein, and it must, therefore, be and hereby is in all respects affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

April 30, 1952. Petition for rehearing denied.