[No. 31968. Department One. June 5, 1952.]

A. L. LOPEMAN *et al., Respondents,* v. WILLIAM H. GEE, *Appellant.*[1]

¹Reported in 245 P. (2d) 183.

*Holman, Mickelwait, Marion, Prince & Black* and *J. Paul Coie,* for appellant.

*Moe & Huse,* for respondents.

WEAVER, J.—Defendant appeals from a judgment against him based upon his alleged negligence in storing onions belonging to plaintiffs.

At the outset, respondents argue that the findings of the trial court must be accepted as the established facts of the case because none of appellant's assignments points to any error of the trial court, as required by Rule on Appeal 43, 34A Wn. (2d) 47, which provides:

"No alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the 'assignments of error' in appellant's brief. In appeals from all actions at law or in equity tried to the court without a jury, appellant *must point out by number and description the finding of fact upon which he predicates error,* otherwise the findings will be accepted as the established facts in the case. . . ." (Italics ours.)

We agree with respondents. Appellant's assignments of error do not meet the requirements of the rule, and we, therefore, accept the trial court's findings as the established

facts of this case. *La Lone v. Smith,* 39 Wn. (2d) 167, 234 P. (2d) 893; *Erickson v. Kongsli, ante* p. 79, 240 P. (2d) 1209; *In re Boundy's Estate, ante* p. 203, 242 P. (2d) 165; *J. A. Wiley Co. v. Riggle, ante* p. 339, 243 P. (2d) 493.

In 1949, plaintiffs, using high quality seed and following standard methods of farming, produced a crop of onions under ideal weather conditions. The crop was harvested in accordance with normal harvest procedure. Through Mr. Arthur Hill, manager, and defendant, William H. Gee, the owner, plaintiffs arranged for cold storage of a portion of their onion crop with the Kittitas Ice and Storage Company. Plaintiffs told defendant that they desired to market the onions during January and February, 1950. Defendant agreed to store the onions, which both parties recognized as a perishable commodity, until March 1, 1950, for, after that date, defendant had other use for the space. Defendant and his agents guaranteed to plaintiffs that, although they had never stored onions before, they were experts in the cold storage business, and that their storage and methods would be adequate. The trial court found that defendant and his employees were in fact unfamiliar with the space and ventilation requirements of onions in cold storage.

Between December 2 and December 16, 1949, plaintiffs delivered 12,161 fifty-pound sacks of yellow Danver and Australian brown onions to defendant for storage. Just prior thereto, the onions were re-run, and were in sound condition upon delivery. Nothing inhered in them which would cause them to deteriorate abnormally under proper storage conditions.

On January 2, 1950, on advice of his son, who told him the onions were sweating and were becoming damp and moldy, plaintiff visited defendant's warehouse and inspected his stored goods. He found the onions wet, and the extent of the injury was such that they were unsuitable for marketing. Plaintiffs made frequent inspections. Although there were assurances by defendant's agent on each inspection that storage conditions would be corrected and remedied, the wetness and mold condition of the onions became progressively worse, and they continued to be unmarketable. In

late April, 1950, the onion skins showed the bag imprint from the coloring on the bag, a condition caused by moisture having been present during storage.

The trial court found that, in storing the onions, defendant was negligent in the following respects: by piling the sacks in rows without leaving proper and adequate space between the rows for circulation of air; by piling onions in tiers without leaving proper and adequate space between tiers for air circulation; by using solid grain doors for the floor of each tier; by piling the sacks too near to the walls and ceiling of the warehouse for adequate ventilation; by failing to maintain the proper temperature and humidity of the air to properly protect the onions; and by utilizing the warehouse far beyond its onion storage capacity.

In April, 1950, plaintiffs informed defendant that they could not accept delivery of the onions and that they were holding defendant responsible for their unmarketable condition. Thereafter upon notice, defendant disposed of them by dumping part, and selling part of them for $1,159.42. The fair market value of onions in January and February, 1950, was one dollar per sack.

The trial court found the facts substantially as we have summarized them and entered judgment in favor of plaintiffs for $10,857.05. This represented damages of $12,161 (being one dollar per sack), plus $1,159.42 received by defendant when he sold the onions, less $2,463.37 storage charges to March 1, 1950.

■■ Where perishable goods have sustained damage in storage, negligence cannot be presumed from the mere fact of damage. The negligent acts or omissions causing the damage must be proved affirmatively. *Van Nostern v. Richey & Gilbert Co.*, 2 Wn. (2d) 663, 99 P. (2d) 608. We have already set forth the particulars in which the trial court found defendant negligent in storing the onions. These findings amply support the conclusion that defendant failed

"... to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise ..." RCW 22.04.220 (Rem. Rev. Stat., § 3607).

Hence, defendant is liable for the loss sustained.

Appellant urges that the court erred in allowing recovery for a total loss of the onions placed in cold storage.

■■ In *Church Mfg. Co. v. American Security Bank*, 130 Wash. 575, 228 Pac. 518, and in *Van Nostern v. Richey & Gilbert Co., supra*, we announced that the measure of damages for the negligent injury or damage to personal property of a perishable nature bailed with a warehouseman was the difference between the property's fair cash market value at the time the extent of the injury was determined, and what would have been the fair cash market value at that time if the property had not been injured or damaged.

We are bound by the trial court's finding that the onions were unmarketable in January and February, 1950. Thus, at the time of the injury, they had no fair cash market value. At the same time, or during the same period, the fair cash market value of undamaged onions was one dollar per sack. The trial court did not err in allowing damages of $12,161.

■ The trial court found that appellant salvaged a portion of the onions in April, 1950, and realized $1,159.42. This sum the trial court *added* to respondents' recovery. This was error. Its allowance resulted in respondents recovering more than the fair cash market value of the onions under the rule announced.

■ Appellant urges it was respondents' duty to mitigate damages by taking the onions out of storage as soon as they learned of the threatened loss. It is true, one is ordinarily required to make reasonable efforts to avoid the consequence of another's wrongful act by avoiding any consequences resulting therefrom. *Sullivan v. Boeing Aircraft Co.*, 29 Wn. (2d) 397, 187 P. (2d) 312, 174 A. L. R. 566. However, if, after an injury is begun, there are repeated assurances from the wrongdoer that the condition complained of will be remedied, there is no duty upon the part of the injured party to take steps to minimize the loss so long as there are grounds to expect that he will perform. *Florence Fish Co. v. Everett Packing Co.*, 111 Wash. 1, 188 Pac. 792; McCormick, Damages, 140, § 38; Annotation, 81 A. L. R. 282, 284.

The trial court found that "plaintiffs complained to agents of defendant in charge of said storage and upon each occasion were assured that the storage condition complained of would be remedied." Plaintiffs, under the circumstances of this case, were entitled to rely upon these assurances. This assignment is without merit.

The trial court found that respondents were liable for storage charges from the commencement of storage until March 1, 1950, in the sum of $2,463.37. From this respondents have not cross-appealed. Appellant assigns as error the trial court's denial of "accrued warehouse storage charges" upon the theory that storage continued until at least April 24, 1950. In *Diamond Ice & Storage Co. v. Klock Produce Co.*, 110 Wash. 683, 691, 189 Pac. 257, we said:

"If a warehouseman storing goods for another makes good to that other all losses caused by his negligent storing, it is equivalent to a proper delivery, and entitles him to his storage charges."

However, a warehouseman is not entitled to storage charges which might accrue after the goods in his possession are damaged through his own negligence. *H. J. Keith Co. v. Booth Fisheries Co.*, 4 Boyce (Del.) 218, 87 Atl. 715.

Appellant's fourth assignment of error is based upon the trial court's refusal

". . . to admit in evidence United States Department of Agriculture official inspection certificate, without identification by, and availability of, for cross-examination, the inspector issuing the same, despite statutory law making such certificate admissible."

Appellant's assignment incorrectly interprets the trial court's ruling. The inspection certificate (exhibit 7), when first offered, was excluded by the trial court for two reasons: It had not been properly identified, and it was not a proper subject of cross-examination. The record does not disclose that it was excluded because it was not identified by "the inspector issuing the same." It simply was not identified at all. Further, the assignment of error is without merit, for exhibit 7, upon proper identification, was later received in evidence.

The next assignment of error is directed to the trial court's refusal to allow submission of a certain hypothetical question to respondents' expert witness, Congdon. Mr. Congdon had testified for respondents as to the condition of the onions, based upon his personal observation of them while in storage. On cross-examination, he was asked to assume that, on April 17th and 18th, the state and Federal governments had issued an inspection report which disclosed "many onions with white roots. In occasional sample a few onions are in a frozen condition. Decay ranges from none to 92%, averaging 11% for the lot." He was then asked, whether, in his opinion, that "would indicate proper or improper warehousing."

Later, counsel made his offer of proof. He reiterated that by the submitted hypothetical question he expected to prove by the witness that the assumed facts showed either "negligent or careful storage" by the warehouseman. This offer was properly refused by the trial court.

Had the witness answered that, from the assumed facts, his opinion was that the warehousing was either "negligent or careful," his answer would have been properly stricken, for, as we have stated, negligence cannot be inferred from the fact that stored perishable goods are in a damaged condition. *Van Nostern v. Richey & Gilbert Co., supra.* The facts set forth in the inspection certificate, upon which the hypothetical question was based, could show neither proper nor improper storage methods. The question was equivocal, under these circumstances. The court did not err in refusing the offer of proof.

The cause is remanded, with directions to the trial court to enter judgment for plaintiffs for $12,161, less $2,463.37 for unpaid storage, or a net judgment for plaintiffs of $9,697.63. Having secured a substantial reduction of the amount of the judgment against him, defendant is awarded his costs on this appeal. In all other respects, the judgment is affirmed.

MALLERY, GRADY, and DONWORTH, JJ., concur.

SCHWELLENBACH, C. J. (concurring in the result)—I concur in the result but feel that costs should be awarded to

respondents. They prevailed in the appeal of appellant. Appellant secured a reduction in the amount of the judgment, but I do not believe, under the circumstances, that the reduction was substantial.