**UNITED STATES of America,
Appellant,**

**v.**

**James E. WAGNER, Trustee in Bank-
ruptcy, Appellee.**

**No. 9464.**

United States Court of Appeals
Tenth Circuit.

Feb. 27, 1968.

———◆———

Robert C. McDiarmid, Atty., Dept. of Justice (Carl Eardley, Acting Asst. Atty. Gen., Lawrence M. Henry, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., with him on brief), for appellant.

Charles E. Matheson, Denver, Colo., for appellee.

Before WOODBURY,* LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This appeal in bankruptcy arises out of the assertion by the United States of a claim to recover storage charges paid on wheat held pursuant to a Uniform Grain Storage Agreement with the bankrupt, Cheyenne Wells Elevator Corporation. Cheyenne Wells converted wheat held under the agreement. The trial court denied the claim in a bankruptcy proceeding and Commodity appeals.

Pursuant to the agreement, Commodity deposited wheat with Cheyenne Wells and the wheat was warehoused on a commingled basis with wheat deposited by others. When the wheat was deposited Commodity received warehouse receipts which reflected the commodity, the quantity, grade and storage date. When wheat was to be withdrawn, Commodity would surrender warehouse receipts representing the desired quantity and issue loading orders directing Cheyenne Wells to ship the wheat.

An investigation of Cheyenne Wells by Commodity in the spring of 1964 disclosed there was not sufficient wheat on deposit to satisfy the claims of all depositors. Withdrawal of wheat by Commodity began shortly thereafter. Unable to meet its commitments, Cheyenne Wells filed a voluntary petition in bankruptcy.

The United States filed a claim for the value of the grain converted and for the refund of all warehouse charges which had been paid for the storage of the grain which had been converted. The claim for the refund of storage charges is based on Section 17(d) of the storage agreement:

"(d) In the event of any disposition of the grain contrary to the terms of this agreement no charges shall accrue for any period of time such grain is not in store and no charges of any kind shall be payable on any quantity of the grain not loaded out: Provided, however, that charges shall be payable with respect to such grain if it is determined by C.C.C. that such disposition resulted from normal and prudent warehousing practices, or was authorized by law, by C.C.C., or by the lawful holder of the warehouse receipt(s)."

Upon determining that Commodity would be paid in full for the value of the wheat converted, the referee held: "Payment by the Trustee of the value of the undelivered wheat is the equivalent of its delivery" and "CCC ought not to have the benefit of payment of value and escape the storage charges which delivery would have entailed." The referee also found that paragraph 17(d) of the storage agreement provided for a penalty for non-delivery and was not enforceable in bankruptcy by virtue of Section 57(j) of the Bankruptcy Act, 11 U.S.C. § 93 (j):

"(j) Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose * * *."

When petitioned for review of the referee's decision, the district court agreed

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

with the referee's determination that Cheyenne Wells was entitled to the storage charges upon payment of the value of the grain converted. The district court further found that the United States would suffer no pecuniary loss. The decision of the referee was affirmed.

■ The basis of the referee's decision that payment of the value of the undelivered grain would be equivalent to proper delivery and entitle the bankrupt to storage charges is Diamond Ice & Storage Co. v. Klock Produce Co., 110 Wash. 683, 189 P. 257 (1920) and Shoreland Freezers, Inc. v. Textile Ice & Fuel Co., 241 S.C. 537, 129 S.E.2d 424 (1963). The United States would distinguish the above cases on the basis the goods stored had actually been kept by the warehouseman who had expended time and space for their care. Concern is expressed that under the referee's decision Cheyenne Wells can retain storage charges covering periods when the wheat was not in fact being stored. We agree that the bankrupt cannot retain charges for periods during which the wheat was not being stored. Such an allowance would constitute unjust enrichment. It is noted that Diamond Ice & Storage Co. v. Klock Produce Co., supra, was modified by Lopeman v. Gee, 40 Wash.2d 586, 245 P.2d 183, 185, 32 A.L.R.2d 904 (Wash. 1952) which held that a warehouseman was "not entitled to storage charges which might accrue after the goods in his possession are damaged through his own negligence." Id. 245 P.2d at 186.

■ By storing and caring for the wheat, Cheyenne Wells performed a service for which it was entitled to be paid, and indeed it was paid. Upon conversion of the wheat, however, Cheyenne Wells no longer stored nor cared for it, no services were performed nor charges earned. When conversion of the wheat occurred, Section 17(d) became effective and by its terms demanded the return of *all* storage charges paid; however, Section 17(d) exacts a penalty only to the extent it requires the return of charges actually earned. Requiring the return of storage charges paid for periods of time after the conversion does not penalize Cheyenne Wells for it was not entitled to charges in the first instance.

■ It has been pointed out that the greatest problem with § 57(j) is determining whether or not a particular debt is a "penalty". 3 Collier, Bankruptcy ¶ 57.22[2] (14th Ed. 1966). It has also been pointed out that no clear-cut formula is available for determining what debts are penalties. Id. However, despite the absence of a clear-cut formula we agree with the referee and the district court that the provisions of Section 17(d) of the agreement exact a penalty for the disposition of grain contrary to the terms of the storage agreement and for grain not "loaded out" and as a penalty, is unenforceable in bankruptcy by virtue of § 57(j). The purpose of Section 17(d) is to penalize the warehouseman for the wrongful disposition of grain and for not being able to "load out" grain upon surrender of the warehouse receipts. We agree with the United States that payment for the converted grain, although perhaps the equivalent of delivery, does not constitute "load out" within the meaning and purpose of the agreement entered into as a part of the government price support program for farm products. However, it is also true that the United States has not suffered any pecuniary loss since it will have been paid in full for the value of the wheat converted. As the referee indicated, if the wheat had been loaded out rather than paid for, the United States would have incurred cost to the extent the storage charges diminished the net value to the government of the wheat. The principle is no different under the circumstances here present.

■ We cannot determine from the record whether or not the storage charges to which Cheyenne Wells has been adjudged entitled include charges after the date of conversion. The computation of the storage charges sought under the United States' claim is apparently contained in Exhibit 3, attached to the claim, but not made a part of the record on appeal. The case is affirmed as to the

holding that Section 17(d) exacts a penalty, unenforceable under § 57(j) of the Bankruptcy Act, by requiring the return of storage charges paid for periods during which the wheat was actually in storage. The case is reversed insofar as it holds that Section 17(d) exacts a penalty, unenforceable under § 57(j) of the Bankruptcy Act, by requiring the return of storage charges paid for periods of time after the conversion of the wheat during which the wheat was not actually in storage.

Affirmed in part and reversed in part.